AMEND et al. v. JAHNS et ux.  (No. 922.)*

(Court of Civil Appeals of Texas.  Amarillo. Feb. 16, 1916.  On Rehearing, April 5, 1916.)

1. HUSBAND AND WIFE ⊚⟶131(4)—SEPARATE ESTATE OF WIFE — ACTIONS — BURDEN OF PROOF.

Where the wife, seeking to save certain lands from execution levied by the husband's creditors, claimed that they were her separate lands, the burden was upon her to show what part, if any, of the land was paid for from her separate funds, in the absence of proof of which it would be presumed the property was that of the community.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 477; Dec. Dig. ⊚⟶131(4).]

2. HUSBAND AND WIFE ⊚⟶133(7)—SEPARATE ESTATE OF WIFE—EVIDENCE—SUFFICIENCY.

Evidence held to support a finding that the husband gave live stock and its increase to the wife, so as to defeat the lien claim of the husband's creditors to land purchased with its proceeds.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 491; Dec. Dig. ⊚⟶133(7).]

3. HUSBAND AND WIFE ⊚⟶49½(8)—SEPARATE ESTATE OF WIFE—GIFTS—EVIDENCE.

While mere branding cattle in the wife's name is insufficient to prove gift thereof to her, it is evidence which may be considered with the facts that the original stock was the wife's, that the husband branded the increase for her, and would not sell them without her consent, which she gave on condition that the proceeds should be invested in land for her, which land she selected, and is sufficient to show a gift of the increase as well as its proceeds.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 254; Dec. Dig. ⊚⟶49½(8).]

4. HUSBAND AND WIFE ⊚⟶133½—SEPARATE ESTATE OF WIFE—EVIDENCE.

Evidence held sufficient to carry to the jury the issue whether land claimed by the wife to be exempt from husband's creditors was her separate property.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. ⊚⟶133½.]

5. HUSBAND AND WIFE ⊚⟶133(1)—SEPARATE ESTATE OF WIFE—EVIDENCE.

Evidence held to show that certain horses were of the separate estate of the wife, so that their issue and proceeds were exempt from the husband's creditors.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 487, 493; Dec. Dig. ⊚⟶133(1).]

6. HUSBAND AND WIFE ⊚⟶266 — SEPARATE ESTATE OF WIFE—EVIDENCE.

The husband may give or convey to the wife community property, and thereby make it her separate property, when it is not done in fraud of creditors, so that, where such gift was made prior to the time at which plaintiffs became creditors of the husband, the gift of community personalty to the wife was valid as against them.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928; Dec. Dig. ⊚⟶266.]

7. HUSBAND AND WIFE ⊚⟶121—CONVEYANCE TO WIFE—HUSBAND'S NOTE FOR PRICE.

Where the wife's separate funds were used in a cash payment on the land, and the husband signed the note for the deferred payment, taking the land in the wife's name under agreement that the note should be paid from her funds, the equitable title to the land vested in her, and

she could defend against the lien claim of subsequent creditors of the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 432, 435–441; Dec. Dig. ⊚⟶121.]

8. APPEAL AND ERROR ⊚⟶1068(5)—HARMLESS ERROR—REFUSAL OF INSTRUCTIONS.

Where the jury found that the whole of land claimed by the wife as exempt from the husband's creditors had been paid for with her separate funds, it was not prejudicial error to refuse to submit the issue of the proportion paid by the wife.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4230; Dec. Dig. ⊚⟶1068(5); Trial, Cent. Dig. § 475.]

On Rehearing.

9. HUSBAND AND WIFE ⊚⟶121 — SEPARATE ESTATE OF WIFE — MINGLING OF FUNDS — EFFECT.

The mere fact that the husband mingled the wife's separate money with his would not defeat her title to land purchased therewith.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 432, 435–441; Dec. Dig. ⊚⟶121.]

10. FRAUDULENT CONVEYANCES ⊚⟶95(5) — GIFT TO WIFE—VALIDITY.

Subsequent creditors cannot attack a gift of stock to the wife on the ground that it was only in pursuance of an antecedent agreement which is invalid, where it was actually a gift of things in esse.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 268, 269; Dec. Dig. ⊚⟶95(5).]

11. HUSBAND AND WIFE ⊚⟶121 — SEPARATE ESTATE OF WIFE—WHAT PROPERTY MAY BE HELD SEPARATE.

The mere fact that land purchased with proceeds of wife's separate personal property was school land, and the purchase money on a deferred payment was due that fund, would not affect the wife's right to hold it in severalty if it was paid for from her funds.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 432, 435–441; Dec. Dig. ⊚⟶121.]

Appeal from District Court, Sherman County; D. B. Hill, Judge.

Action by W. S. Amend and others against George D. Jahns and wife. Judgment for defendants, and plaintiffs appeal. Affirmed.

R. E. Stalcup, of Dalhart, W. I. Gamewell, of Stratford, and B. K. Goree and H. A. Turner, both of Ft. Worth, for appellants. Stahl & Elliott, of Stratford, and Crudgington & Works, of Amarillo, for appellees.

HUFF, C. J. This is an action brought by the appellants to foreclose a judgment lien upon section No. 44, block 3–T, of the Texas & New Orleans Railroad Company, situated in Sherman county, alleged by them to be the property of their judgment debtor, George D. Jahns. Mrs. Nettie V. Jahns, the wife of George D. Jahns, intervened in said suit, alleging that the property was her separate property, and asked that it be decreed to her as her separate estate, and that the cloud created by the abstracting of appellants' judgment be removed. There are several parties

to this suit, and the pleadings are rather complicated, but the above will be a sufficient statement to understand the issues presented in this court, and discussed by us.

[1] The first assignment in this case is that the trial court erred in refusing to instruct a verdict for the appellants. The first proposition thereunder is to the effect that the burden was on Mrs. Jahns to show what part, if any, of the cash payment on the land was her separate funds, and, if not so established, the amount would be regarded as having been paid out of the community. Second, that the burden was on appellee to show that she had obligated herself to pay the deferred payment out of her separate estate, and that it was so paid, and, if not all, what portion thereof; and if not so shown, the deferred payment would be regarded as a community obligation. If the affirmative of either one of these propositions was shown by the appellee, then it would have been error to instruct a verdict for the appellants, and the trial court would have been justified in refusing the charge on that ground.

[2] Before the land was purchased and the deed executed by Amend to George D. Jahns, the husband, it was agreed by Jahns and wife that when her cattle and horses were sold, the money received therefrom should be placed in land for her separate use, and upon this condition she agreed to their sale. She went with her husband from their home in Gray county, to Sherman county, to look at the land. It appears that two sections were purchased at the same time by Jahns. The section in question the wife, when she looked at it, selected for her section, and this land, both husband and wife testified, her separate funds paid for. The consideration paid for this land was $900 bonus, $500 cash, and one note for $400, signed by the husband alone. The $500 paid down, it is testified by both husband and wife, was the proceeds of the sale of 16 head of cattle claimed by the wife, the price for which the cattle sold was $20 per head, aggregating $320, and three head of horses belonging to the wife, for the sum of $280, making a total received for the horses and cattle, $600. At the time of the marriage between Jahns and wife, the wife had 8 head of cattle and 6 head of horses, which were given her by her father before her marriage, and which also consisted of the increase from the original stock given her by her father up to the time of her marriage, which was some time in 1902. The land was purchased in September, 1905. The three horses first sold were part of the original stock given by Mrs. Jahns' father, and which she owned at the time of her marriage. The cattle sold, the proceeds of which went into the land, were in part the original stock and in part the increase therefrom after marriage. The evidence in this case shows that the husband owned cattle of his own, which he ran in one brand and that the wife had a

separate brand, which was used to designate her cattle. The testimony shows that the wife looked after the branding of the increase from her cattle and saw to it that her brand was placed thereon; that it was understood that the increase was not to be mingled with the husband's cattle. He would not sell them, and did not do so without her consent, and when he did sell them, it was upon the condition that the proceeds be placed in land for her, and she selected the land into which it should be placed. The cattle and horses were sold, and the proceeds held in the bank in the name of the husband, to be used in paying for the land for her, and at the same time he also sold his cattle and land owned by him, in Gray county, and after paying his debts, had remaining about $1,000, which sum he paid for a section of land in Sherman county, purchased by him at the time the land in question was purchased. It is shown by the husband and wife that it was agreed at the time and before the deed that the deferred payment of $400 should be paid from proceeds to be derived from the sale of the wife's remaining horses. The husband, shortly after their marriage, gave his wife two colts, which she owned and held at the time the land in question was acquired. When the note for the land fell due, the husband borrowed money from a bank to pay it, and secured the bank with a mortgage on his wife's horses and some of his own. Afterwards, under their agreement, when the land was purchased, the husband sold some of the wife's horses for $360, and applied on the debt in the purchase of the land, and the balance due thereon was paid by check on the balance of the fund in the bank from the sale of the cattle of the wife, and the three first horses. It is explained by both husband and wife that some of the colts from the horses were not branded with the wife's brand for the reason that they did not desire to scar them. They both testified that these horses given by the father and the two colts by the husband, together with the increase, was the property of the wife, and was the property that paid for the land, together with the cattle. We believe the facts in this case were sufficient to authorize the jury to find that the husband gave the increase of the cattle from the original stock to the wife.

[3] While perhaps the mere branding of the cattle, as was held in Rhodes v. Alexander, 19 Tex. Civ. App. 552, 47 S. W. 754, will not be sufficient to prove the gift, yet we think it is nevertheless evidence of such fact, and may be considered with other circumstances. The jury's verdict ought not, we think, be set aside on that account. In this case the original stock was the separate property of the wife when she married her husband. The husband branded the increase for the wife, would not sell them without her consent, and she consented to sell on condition that the proceeds should be invested in land for her,

and she selected the land into which the proceeds were placed, and the land thereafter was regarded as her property. This, we believe, evidences a gift of the increase, as well as the proceeds therefrom.

[4] The three first horses sold were of the original stock. We believe it is reasonably certain that the cash payment was out of the wife's separate estate. The court would have been unauthorized to instruct a verdict for the appellant on that ground.

[5] We believe the evidence will support a finding that the horses were the separate property of the wife. They were set apart and designated as such by both the husband and wife. The wife controlled the sale of them to the extent that the proceeds, when sold, must be paid on the land. The husband agreed thereto, and all the facts indicate that the increase of the original eight head of horses was given to the wife.

[6] In this case it is shown at the time of the gift, the appellants were not the creditors of George Jahns, and therefore were in no way interested in the transaction had between the husband and wife; in fact, the evidence in this case shows that the judgment lien sought to be foreclosed was obtained on a warranty contained in a deed given in the sale of the land by Jahns, which was purchased at the time the land in question was acquired. It is the settled rule, as we understand it, in this state, that the husband may give or convey to his wife the community property, and thereby make it her separate property when it is not done in fraud of creditors.

[7] The deferred payment on the land, evidenced by the note of the husband, was paid by the separate funds of the wife, under an agreement of the husband and wife at the time the land was acquired. This, we think, vested in her the equitable title to the land, and she could defend against the lien sought to be established by subsequent creditors and lienholders. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Levy & Co. v. Mitchell, 52 Tex. Civ. App. 189, 114 S. W. 172; Carter v. Bolin, 30 S. W. 1084; Cavil v. Walker, 7 Tex. Civ. App. 305, 26 S. W. 854.

It is not deemed necessary to discuss the question whether the land held by the husband in his name was under an express trust, or whether it was a resulting trust. If the land was purchased under an agreement that the land should be for the wife's separate estate, we see no reason why, when so purchased, the equitable title would not vest in her under an express trust, especially so when the property given to her paid the purchase price for the land.

[8] The second assignment will be overruled, for the reasons heretofore given. The third assignment is overruled. We think the trial court's charge fully covered the issue here sought to be given in the requested charge. The verdict of the jury renders the assignment and the refusal of the requested charge immaterial, for the reason that they found the entire consideration for the land was paid out of the separate funds of the wife. The exact amount was thereby ascertained. They did not find that she paid only a portion out of her separate estate, and therefore there was no necessity of finding the exact proportion paid out of her separate property, and the amount paid from the community estate. The charge of the court, however, as given, we regard as a clear presentation of the rules governing this case, and which were sought in the specially requested charge by appellants.

The fourth assignment is overruled for the reasons first above given.

The case will be affirmed.

### On Rehearing.

The evidence in this case, as stated in the original opinion, warranted the jury in their finding as to the cattle, 16 head of which were sold at $20 per head, making a total of $320, and three head of horses at $280, totaling $600. There can be no question but the horses were the separate property of the wife at the time of this sale. It appears these cattle were sold to the mother of the husband, together with some of his cattle—about 30-odd head in all. He took his mother's note for $250. It is now asserted there is no evidence of the gift of this $250 by the husband to the wife. The husband had $600 of her money. The wife testifies specifically that her husband promised her, when they were selling out their property preparatory to the move, "If I would let him sell my stock, that he would let me have some land." She looked at the land for herself, "and I selected this section that I still own;" and they sold the horses for $280, and that his mother paid $250, on the cattle, wihch was placed in the bank, and later the mother finished paying on the cattle, and paid that into the bank; that she intrusted to her husband all the proceeds of the cattle, and left to him the details of investing the money; that he sold the stock with her consent and deposited it, and she selected what she wanted done with the money. The evidence, if believed by the jury, established an agreement between the husband and wife that the proceeds from the cattle and horses should go towards paying for the land for her. The land should be hers, and that she selected it.

[9, 10] The fact that the husband mingled her money with his did not defeat her title to the proceeds from the sale. The fact that for part of it he took his mother's note for $250, which was afterwards paid, did not defeat her right to the proceeds from the sale of the cattle, if they were hers. If the $600 was hers, and her husband held it as hers and for her, and made the first payment on the land out of it, to that extent the land

was purchased with her separate money. Three horses were hers without question. The increase of the cattle shows a gift to the wife. They were set apart and designated as such by her husband as they increased. This shows it was not a mere agreement to change the law governing community rights, but it was a gift of property in esse. It was not such by virtue of an antecedent agreement alone, but by setting them aside to her separate use and as her property at the time. Speer on Marital Rights, § 116. The antecedent agreement made before the increase, the subsequent agreement, the agreement to place the proceeds in the land, the selection of the land, the intention expressed at the time and afterwards, authorized the jury to find it was then the understanding to make a gift of the community interest in the cattle, as well as the proceeds therefrom. Subsequent creditors, such as appellant and who were such years after this relation had been fixed by the agreement between the husband and wife, will not be permitted to attack the gift on that ground alone. Cavil v. Walker, 7 Tex. Civ. App. 305, 26 S. W. 854; Jordan v. Marcentell, 147 S. W. 357; Cone v. Belcher, 57 Tex. Civ. App. 493, 124 S. W. 149.

As to the horses which were sold to pay the deferred payment, the same rule above set out will apply. Although there was a deferred note, it was expressly agreed between the husband and wife, when the land was purchased, that such deferred indebtedness should be paid out of the proceeds from the sale of the wife's horses. The evidence shows the debt was finally so paid. This vested her with the entire estate in the land.

[11] The fact that the land was school land, and that the purchase money due that fund, will not affect the matter, as we understand the husband could so contract that the interest should be the separate property of the wife, except as to existing creditors at that time. Swearingen v. Reed, 2 Tex. Civ. App. 364, 21 S. W. 383.

The motion will be overruled.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.