## TRAMMELL v. TRAMMELL.

(Circuit Court of Appeals, Fifth Circuit. December 16, 1920.)

No. 3489.

1. **Husband and wife** ⊂⇒255—**Real estate bought with funds of wife her separate property.**
   Evidence *held* to support a finding that real estate, although title was taken in the name of the community, was paid for from separate funds of the wife, and thus, under the law of Texas, became her separate property.

2. **Husband and wife** ⊂⇒265—**Effect of mingling community funds and separate funds of wife stated.**
   Under the law of Texas the fact that community funds are deposited with separate funds of the wife does not preclude the wife from making payments therefrom on her separate account, where sufficient of the fund is hers.

3. **Husband and wife** ⊂⇒255—**Wife may claim as separate property land purchased with her property and note.**
   Where title to real estate bought was taken in the name of the community, but the purchase price was paid from separate funds of the wife, it

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is immaterial to her right to claim it as her separate property that only part of the price was paid before the conveyance, and the remainder secured by her note and reservation of a lien.

Appeal from the District Court of the United States for the Northern District of Texas, at Abilene; James C. Wilson, Judge.

Suit in equity by Mrs. J. E. Trammell against Charlie Trammell. Decree for complainant, and defendant appeals. Affirmed.

J. M. Wagstaff, of Abilene, Tex., and Tarlton Morrow, of Wichita Falls, Tex., for appellant.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. Appellee filed a bill to remove cloud from title to a 640-acre tract of land. From a decree in her favor, defendant appeals.

It stands admitted by the pleadings that appellee was married to W. F. Trammell, appellant's father, in 1897; that the land in controversy was conveyed to appellee and her husband jointly. The deed recited a consideration of $1,280, of which the payment of $160 is acknowledged, as is also the delivery of four promissory notes, one for $160, due November 1, 1900, and the other three, for $320 each, due November 1, 1901, 1902, and 1903, respectively. The notes were executed by both appellee and her husband, and reserved a vendor's lien, and so also did the deed, in the following language:

"But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described property and premises and improvements, until the above-described notes and all interest thereon are fully paid according to its or their face, tenor, effect, and reading, when this deed shall become absolute."

Appellant is appellee's stepson, and, as heir of his deceased father, is the apparent holder of a fourth undivided interest in the legal title. The question in dispute between the parties is whether the land was the separate property of appellee, as contended by her, or whether it was community property of herself and husband, as claimed by appellant.

Upon this disputed question, appellee testified that she had the land in controversy leased and partly fenced, and was negotiating for its purchase, before her marriage to appellant's father; that at the time of her marriage she had on deposit in the bank about $800, and was the owner of $2,000 in notes, 124 cattle, 20 horses, and about 500 acres of land. She produced her bank statements, showing a balance of $879.22 in her favor on March 1, 1897, and a balance of $2,578 in her favor on February 1, 1901, and testified that the second statement included the proceeds of the notes, which had been paid at that time. Appellee further testified that before the execution of the deed she made the cash payment of $160 to apply on the purchase price; that on November 1, 1900, she paid the note of $160 then due, and that she paid the remaining notes above recited, given to secure the purchase price, in February, 1901; that she did not know that the title was conveyed to herself and husband jointly until shortly after his death in 1916; that at

the time the land was purchased she thought the title was put in her name, and that it was her intention that it should be; that at the time of her marriage her husband had only three mares and a buggy, worth altogether about $150; that he gave two of the mares to appellant, and that there was never any increase from the one he kept; that her husband did not contribute any property to the community estate, except as above stated; that his salary and increase in the cattle and the increase in the land were used up in living expenses; and that her bank account was kept for her separate funds. It was undisputed that appellee's husband was a Baptist minister of excellent character, and that his salary as such was about $50 per month.

Appellant offered no testimony, except the deed already in evidence. Appellant insists by his assignments of error that the evidence fails to show (1) that appellee paid the purchase price of the land out of her separate funds; or (2) before the execution of the deed; and (3) that the court erred in permitting appellee to testify that she thought the title was put in her name, and that it was her intention that it should be.

[1] 1. In Texas, property, whether real or personal, owned before marriage, remains the separate property of the husband or wife; whereas, the presumption is that property acquired during marriage is the common or community property of the husband and wife, until the contrary is satisfactorily proved. Revised Statutes of Texas 1911, §§ 4621, 4622, 4623. Real estate, though taken in the name of the community, becomes the separate property of the wife, if the purchase price is paid out of her separate funds at the time of purchase. If she contributes only a part of the purchase price, she has separate property in the proportion her partial payment bears to the entire purchase price.

Appellant does not dispute these propositions, but, on the contrary, relies upon them. He concedes that appellee would have an undivided one-eighth separate estate in the land, if she paid $160 out of her separate funds at or before the execution of the deed. The contention on this point is that the initial payment of $160 was not shown to have been made out of appellee's separate funds. The only basis for this contention is that appellee's separate funds were mingled with other moneys deposited after marriage, and which were therefore, in the absence of proof to the contrary, presumed to be community funds.

[2] It seems to be beyond dispute from the testimony that appellee had at all times sufficient money in the bank, derived from or a part of her separate property, to make this initial payment. It would be a very strained construction to hold that there were no separate funds, simply because some deposits had been made out of community funds, and the contrary has been held in Texas. Amend v. Jahns (Tex. Civ. App.) 184 S. W. 729. Only by the same method of reasoning could it be argued that the subsequent payments of the balance of the purchase price, represented by the lien notes, were not made out of appellee's separate funds. Even if commingled funds become wholly community property, the trial court would have been warranted from the testimony of appellee in holding that her individual funds were kept in the bank separate from community funds.

[3] 2. It is further contended that the testimony is inadequate to sustain the decree to the effect that the land in litigation was separate property, except as to the one-eighth undivided interest, although all the payments were made out of appellee's separate funds. The basis of this contention is that, in the absence of agreement, it is essential that the entire purchase price be paid at or before the purchase is made and the deed delivered. The result would be that appellee would be entitled to a separate estate in only that portion of the land represented by the initial payment of $160. There does not appear to be any peculiar rule in Texas upon this subject. By the weight of authority it is held to be sufficient to establish equitable title to property when only a part of the purchase price is paid, if the balance thereof is secured to be paid at the time of the purchase. Ducie v. Ford, 138 U. S. 587, 11 Sup. Ct. 417, 34 L. Ed. 1091; McGovern v. Knox, 21 Ohio St. 547, 8 Am. Rep. 80; 3 Pomeroy's Equity Jurisprudence, § 1037. This rule seems to be recognized in Texas. Kingman-Texas Implement Co. v. Herring National Bank (Tex. Civ. App.) 153 S. W. 394.

3. If section 3690, R. S. Tex. 1911, is broad enough to prohibit the admission of appellee's testimony as to her intention and belief with respect to the title, on the ground that such testimony constituted a transaction with her deceased husband, the error assigned was harmless, in view of the fact that manifestly the trial court did not proceed upon the theory that there was an agreement between appellee and her husband, because no evidence of any agreement was offered or admitted. The decree can be sustained, and was doubtless based, upon the principle that it was not essential that the whole of the purchase price should be paid at the time title was taken, if appellee was obligated to pay the balance of the purchase money, and if it was secured to be paid by her note and the reservation of a vendor's lien.

Prejudicial error is not made to appear by any of the assignments, and the decree is therefore affirmed.