### CALLAWAY et al. v. CLARK et al.
#### No. 6266.

Court of Civil Appeals of Texas. Texarkana.

Feb. 26, 1947.

Rehearing Denied March 6, 1947.

448

S. I. Cornett, of Linden, and Conly K. Stevens, of Dallas, for appellants.

B. F. Whitworth, of Houston, for appellees.

HALL, Chief Justice.

This is an action in trespass to try title brought by appellants against appellees and concerns the title and possession of certain lots in Hughes Springs, Cass County, Texas, upon which is located a dwelling house.

Appellees' amended answer upon which they went to trial averred that the lots were community property of their father, T. R. Harkrider, and their stepmother, Mrs. Lillie B. Harkrider, and that said lots and house were incapable of partition. Appellees prayed that the property be sold and after payment of all costs and expenses of said sale the balance to be divided one-half to appellants and one-half to appellees.

The trial was to a jury upon the following special issue: "Do you find from a preponderance of the evidence that the property in question in this case was paid for by the separate funds of Mrs. Lillie B. Harkrider, wife of T. R. Harkrider?" to which the jury answered "No." Judgment was entered in the court below ordering the property sold and after costs and expenses were paid the proceeds to be divided one-half to appellants and one-half to appellees.

Appellants' first two points assert that the trial court erred in overruling their motion non obstante veredicto for the reason the undisputed evidence shows that the title to the house and lots vested in their ancestor, Mrs. Lillie B. Harkrider, since the evidence shows without contradiction that the lots were paid for by a check drawn by Mrs. Lillie B. Harkrider on funds standing in her name in the First National Bank of Hughes Springs.

Appellants are the children of Mrs. Lillie B. Harkrider by a former marriage with Bradford Stevens, and appellees are the children of T. R. Harkrider by a former marriage. T. R. Harkrider and Lillie B. (Stevens Waldon) were married November 22, 1919; Mrs. Harkrider died August 11, 1940, and T. R. Harkrider died February 16, 1941. The house and lots here in controversy were conveyed to Mrs. Harkrider by deed dated March 29, 1927, for a consideration of $1,000, cash, paid by a check drawn by Mrs. Harkrider on her bank account designated "Mrs. T. R. Harkrider, Special." This deed contains no recitation that the house and lots were to be the separate property of Mrs. Harkrider, their mother.

It is appellants' contention that the house and lots were the separate property of Mrs. Harkrider by virtue of the terms of R.S. 4622, which is: "Funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account."

Concerning the meaning and effect of the statute quoted above, it is said in Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494, 496 (writ refused): "Manifestly this statutory presumption was meant for the guidance of the bank in its dealings with the deposit or account of the spouse in whose name it is, and was also meant to apply to dealings of creditors generally with the spouse in whose name it is. 'It was never meant to supplant, even as to such deposit itself, the general presumption' of community estate above discussed."

R.S. Art. 4619, Vernon's Ann.Civ.St. art. 4619, which we think is controlling here, is: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

A lengthy and learned discussion of the two statutes set out above by the late Chief Justice Fly of the San Antonio Court of Appeals in the case of Winters v. Duncan, Tex.Civ.App., 220 S.W. 219 (writ refused), is applicable here.

While the above discussion deals with funds on deposit in a bank, on the dissolution of the marriage relation, we think it applicable to the situation here with respect to the real property involved as showing the relative importance of the two statutes.

■ The burden rested with appellants in the court below, perforce of the statute set out next above, to establish the fact that the money with which the house and lots were purchased was the separate funds of Mrs. Harkrider. The trial court recognized this fact and placed the burden on them in the single issue submitted. Appellants introduced in evidence a deed from Mrs. Harkrider to her husband, Mr. Harkrider, dated March 29, 1927, conveying to him a life estate in the property, as a circumstance tending to show her claim that the house and lots were her separate property. This deed bears the same date as the conveyance of the property into Mrs. Harkrider. Appellants also introduced in evidence statements made to neighbors by Mrs. Harkrider that the lots were purchased with insurance money she received on the death of her first husband, Bradford Stevens. There is also evidence by appellants that Mr. Harkrider, during the time of his marriage to Mrs. Harkrider, was only partially employed as an engine wiper for the railway and as a carpenter about town.

■ Appellees' evidence shows that Bradford Stevens died on December 11, 1910, that some several months after that his widow, then Mrs. Lillie B. Stevens, had on deposit in the Hughes Springs bank the sum of $1,468.15, and that on March 7, 1913, her account amounted to $1,848.65. On this last date her entire deposit was withdrawn and her account closed. For about two years, from 1913 to 1915, it appears that Mrs. Stevens was married to a man by the name of Waldon and lived with him in Dallas until sometime in 1915, when she moved back to Hughes Springs. The record is silent thereafter with respect to Waldon. On April 19, 1915, Mrs. Harkrider, then Mrs. Lillie B. Waldon, made a deposit in the Hughes Springs bank of $395 in the name of Lillie B. Waldon. As stated above, Mrs. Lillie B. Waldon married T. R. Harkrider on November 22, 1919, and the record of Hughes Springs bank shows that on that date she had on deposit in said bank the sum of $112.13. On May 28, 1924, there was deposited in the account of Mrs. Harkrider, "Special," the sum of $500, and on the same date Mr. Harkrider withdrew from his account $516.95. On January 18, 1926, Mrs. Harkrider closed the account of Mrs. T. R. Harkrider by withdrawing therefrom the entire deposit of $455, and on the same date deposited a sum of $455 to the credit of Mrs. T. R. Harkrider, "Special." With some other small deposits, the $500 deposit and the $455 deposit listed last above, make up the $1,000 deposit in the name of "Mrs. T. R. Harkrider, Special," on the date the house and lots were purchased as above set out. Appellees introduced further testimony from neighbors in Hughes Springs to the effect that after Mrs. Lillie B. Harkrider returned to Hughes Springs, in 1915, she stated that she had lost all of her money in a deal in Dallas, and that she borrowed a sewing machine from one witness with which to do sewing for the public, and that she did do considerable sewing and dressmaking for the public. This witness also testified that Mrs. Harkrider told her at or about the time she purchased the house and lots in controversy that Mr. Harkrider (her husband) did not like to live in a house partially owned by her children and that they were buying the house and lots in controversy so that she and Mr. Harkrider would have a home of their own; "that they had worked awfully hard to make the money with which to buy this home." This testimony raised a question of fact as to whether the property was paid for with separate or community funds, and was properly submitted to the jury by the trial court. Atlanta National Bank v. Map, Tex.Civ.App., 261 S.W. 191; Trimble v. Stephenville State Bank, Tex. Civ.App., 96 S.W.2d 733. There being sufficient evidence to support the jury's nega-

tive answer to the issue submitted, these points will be overruled.

The other points advanced by appellants are without merit and are overruled.

The judgment of the trial court is affirmed.