WALLACE C. HODGE, EXECUTOR ET AL V. A. A. ELLIS

No. A-4768. Decided April 13, 1955.
Rehearing denied May 11, 1955.
(277 S.W. 2d Series 900)

342

*Nelen L. Sewell*, and *C. T. Gettys*, of Decatur, and *John R. Lindsey*, of Jacksboro, for petitioners.

The Court of Civil Appeals erred in holding that a part of the property had been acquired as community property when the evidence showed that the wife had substantial separate property and there was no evidence to show that she was without amply means to acquire same. That court also erred in declining to apply the doctrine of Election to prevent plaintiff from taking the property provided for him in the will and also the properties denied to him and given to others. Ullman v. Jasper, 70 Texas 447, 7 S.W. 763; Allen v. Allen, 101 Texas 362, 107 S.W. 528; Goldberg v. Zellner, 235 S.W. 870.

*John W. Moore*, of Jacksboro, *J. Roy Creighton*, of Mineral Wells, *W. E. Fitsgerald*, of Wichita Falls.

In response cited Sailer v. Furche, 22 S.W. 2d 1065; Smith v. Butler, 85 Texas 130, 19 S.W. 2d 1083; Davis v. Davis, 108 S.W. 2d 681.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This dispute at its present stage is largely one over real estate in Jacksboro, Jack County, between the plaintiff (our respondent) A. A. Ellis, as community survivor of, and beneficiary under the will of his late wife (hereinafter referred to as the testatrix) and the defendants (our petitioners), who are her executor (Wallace C. Hodge) and the remaining beneficiaries of the will, that is, her sister (Mrs. Hodge) niece (Mrs. Motley) and a grandnephew (Avon Motley). From the judgment, rendered upon a nonjury trial and with largely general findings, the respondent-plaintiff seeks no relief, despite some adverse rulings, including adjudication to the petitioners-

defendants of certain properties in Wise County. The petitioners-defendants, however, appealed from the rulings as to the Jacksboro property, the judgment being affirmed by the Fort Worth Court of Civil Appeals. 268 S.W. 2d 275-290.

The items of property in question are: (a) a group of tourist courts hereinafter referred to as the Stewart property; (b) an apartment house called the Walker property; (c) another apartment property called the Wilson property; and (d) the community homestead. All of them except (d) stood in the name of the testatrix as her separate property at her death in 1950, and her will, executed in 1948 and duly probated, purports to make specific disposition of them all in favor of the petitioners-defendants, except that it recognizes the respondent-plaintiff's community half-interest in the homestead (devising "my community interest" to the petitioners-defendants), and except that the respondent-plaintiff is devised a life estate in item (a) above. The respondent-plaintiff, asserting that the properties were acquired with community funds, has been awarded a community half interest in them all, along with a life estate in the testatrix' half of item (a) under the will, as against the contentions of the petitioners-defendants that all, except the homestead, were truly the separate property of the testatrix, and that in any event the respondent-plaintiff was required to elect between his community interest and his benefits under the will. The petitioners-defendants have also fruitlessly argued the "no contest" provisions of the will to be violated by this suit. As between the petitioners-defendants themselves there is no dispute.

The principal question is, of course, that of community versus separate estate, and, as the court below justly observed, it is rendered difficult by reason of the scarcity of detailed or positive evidence on various important points. Indeed, aside from the exhibits of the probate proceedings and the deeds and notes reflecting the purchase of the properties in dispute, practically all of the evidence is the testimony of the respondent-plaintiff.

The testatrix and the respondent-plaintiff were married in 1937 and came to live permanently in Jacksboro at some date between 1938 and 1942, residing there together until her death. Properties (a), (b), and (c) above mentioned were acquired respectively in 1945, 1946 and 1947 from the Stewarts, Walkers and Wilsons as the respective grantors. The deeds were respectively recorded at Jacksboro promptly upon execution. Each

one stated the corresponding premises to be conveyed to the testatrix as her separate property, using these four latter words or similar ones, although making no express reference to the source of any of the consideration (cash or deferred) as separate or community, *except* in the case of the Wilson deed (actually two deeds) in which there was the brief reference, "the sum of Ten and More Dollars * * from her separate estate." In the Stewart and Walker purchases the consideration was both cash and an installment note, the corresponding figures in the former being $3,000 and $6,000, and in the latter $5,000 and $3,000, as duly recited in the deeds. In the Wilson, which was the latest, the total consideration of $8,000 was paid with a cashier's check of the First National Bank at Jacksboro and a small cash sum, both being the proceeds of a loan from that bank, evidenced by a note for $8,000 secured by deed of trust upon all this property and the other two. The notes in the Stewart and Walker transactions were signed by the testatrix alone, but that in the Wilson, as well as the corresponding deed of trust, was signed by both spouses. None of the notes themselves (nor, apparently, the Wilson deed of trust) made any clear reference to the separate estate of the testatrix, although the note for the Wilson money did recite that it was "borrowed by Willie Lesca Ellis from said First National Bank."

The testimony of the respondent-plaintiff is susceptible of the construction that at the time of the marriage (1937) the testatrix owned nothing but real estate in Wise County, except for an inheritance of $600 received earlier in the same year; and it appears from such testimony and the inventory of the estate of the testatrix, that this same real property was still on hand at her death, it having been adjudged, as first before stated, to the petitioners-defendants. The inventory and appraisement reflects no assets, whether real or personal, separate or community, except the Wise County and Jacksboro properties. Unless it be the bare fact of the substantial cash payments made by her in the Jacksboro purchases, there was no evidence to suggest any gifts or inheritances of money to the testatrix from third parties during the marriage, although it seems to be admitted that she owned as separate proptrty a house in Decatur (Wise County) purchased by her at some date before she purchased the Walker property in late February, 1946, and sold by her for $5,625 "about" the latter time. There was nothing in the way of specific proof as to the disposition of either the sum last mentioned or the $600 inheritance.

The respondent-plaintiff further testified that the testatrix

received during the marriage a rather substantial income (several hundred dollars a month) from the Jacksboro properties other than the homestead following their respective acquisitions in early 1945 and thereafter, about $60 per month from her Wise County properties from 1937 onward, as well as some $3,000 from her services as a nurse and about $3,000 as the profit from raising chickens. While some of this testimony is not overly convincing, it does amount to saying that the testatrix received during the marriage approximately enough community funds to have made, at the very least, the cash payments on the Stewart and Walker properties, the Wilson having been bought, as before stated, last, and entirely with the proceeds of a bank loan. Indeed, the respondent-plaintiff testified in so many words that the testatrix used the chicken money to pay for the Walker place.

It appears that sometime or other after the spouses had moved to Jacksboro, apparently around 1941, they opened two bank accounts, each in his or her own name (presumably without any words like "separate property" in the title of either account) and that the testatrix kept in her account the funds coming into her possession as above mentioned, while the respondent-plaintiff kept in his account whatever funds came into his possession, including his earnings as a carpenter. This was all evidently without any formal agreement, but at the same time without objection by either party. The respondent-plaintiff testified also that at some unstated times and in some unstated amounts each had deposited in and checked from the account of the other, but it seems that this was not a regular practice, and it does not appear that either ever knew what balance the other had. He appears to have bought real and personal property, giving checks therefor on his own account and considering the property as his own. He said the separate system was followed "for business reasons," without further explanation. There is at least an inference from his testimony that some of the payments on the properties in question came from the account of the testatrix, and evidently none came from his. The bank president testified without contradiction that at least a large portion of the payments on the note for the Wilson purchase were made by the testatrix in currency rather than by check. There is nothing in the inventory or otherwise to indicate that the testatrix had but the one bank account during the marriage by inference from the size of the cash payments on the Jacksboro purchases. No relevant bank records concerning the accounts were in evidence, nor any proof as to what amounts, whether separate, community or both, were in either

account at any given time nor any explanation of why her account had disappeared at the time of the inventory. While each evidently knew that the other, from time to time, made deposits in and drew checks on his or her respective account, there is no evidence as to the presence, knowledge or consent of one party on the occasion of any particular deposit or withdrawal by the other, or on the occasion of the creation of either account.

Despite his knowledge of the business affairs of the testatrix with reference to the figures of her receipts of rentals from the various properties in dispute, personal earnings and profits from the chicken business, as well as other matters above referred to, and despite his further testimony that he knew generally about the purchase of each property, including the price of at least one, and even in advance of the closing, and that he had actually inspected one or more before it was purchased, and despite the prompt record of each deed at the city of their residence and even his admitted signature on the bank note for the Wilson purchase, the respondent-plaintiff insisted that he never knew of, or consented to, the terms of the deeds in so far as they purported to make the respective premises the separate property of the testatrix. In this connection he gave no evidnce of, nor even pleaded. any acts of duress or fraud on her part or that of anyone else.

■ The elemental presumption in favor of the community as to land acquired in the name of either spouse during the marriage is, indeed, sometimes displaced by a presumption in favor of the separate estate of the wife where the deed of acquisition recites either that the land is conveyed to her as her separate property, or that the consideration is from her separate estate, or includes both types of recitation. McCutchen v. Purinton, 84 Texas 603, 19 S.W. 710; Goldberg v. Zellner, Texas Comm. App., 235 S.W. 870; Smith v. Buss, 135 Texas 566, 144 S.W. 2d 529; Paudler v. Paudler, 5 Cir., 210 Fed. 2d 765; Evans v. Purinton, 12 Texas Civ. App., 158, 34 S.W. 350, per Tarlton, C.J., writ of error refused. See also comments in Kahn v. Kahn, citing the McCutchen case, 94 Texas 114, 118, 58 S.W. 825, 826. This latter presumption, like most others concerning the same subject matter, is generally rebuttable. Cases cited, supra; also Kearse v. Kearse, Texas Comm. App., 276 S.W. 690. And its importance, of course, lies in the manner of its application to particular sets of facts. For example, where, as in Goldberg v. Zellner, Smith v. Buss and Paudler v. Paudler, all supra, the husband is a party to the transaction, the result generally is

to hold the property to be separate property of the wife, even though the consideration be community or from the separate estate of the husband, and even though the husband on the trial denies that the purchase was by way of gift of either to the wife. And in such cases where all or part of the consideration is contractual, as where, for example, the deed to the wife stating the conveyance to be for her separate benefit and in consideration of her separate funds, is made pursuant to an installment purchase contract of the husband and wife, itself expressly providing for the payments to be made from her separate funds, we have invoked the parol evidence rule to exclude proof by the husband that the consideration was actually community and the purchase actually for community benefit. Lindsay v. Clayman, 151 Texas 593, 254 S.W. 2d 777. The Goldberg and Paudler cases, supra, also involved executory consideration in that there were purchase money notes signed by both husband and wife, though not mentioning the source of the stipulated payments as separate or community. In the Smith case the deferred consideration was payable from the wife's separate estate according to notes signed by her alone, all as recited fully in the deed. The three decisions were all in favor of the wife's separate estate, but do not in terms rest on the parol evidence rule.

■ Where the husband is a party to the purchase for the purported separate interest of the wife, even though his name may not appear in the documents (see Smith v. Buss, supra) there is good reason to presume the recitals in the deed to be true, because his position as regards the wife and the community is much the same as if he were the grantor, and in the latter situation it would be at least unusual that he should intend to convey to the community when the property was already community or even where it was his separate property. "Such a construction would be equivalent to holding that it passed the title from the community to the community. or, in other words, that it passed nothing." Gaines, A.J., in Lewis v. Simon, 72 Texas 470, 475, 10 S.W. 554, 556, as quoted in Kahn v. Kahn, 94 Texas 114, 119, 58 S.W. 825, 826. But the situation is otherwise when the husband is not a party to the purchase. In Kearse v. Kearse, Texas Comm. App., 276 S.W. 690, where the transaction was between the wife and her daughter, the consideration being all in the form of notes signed by the former only, the court, in ruling against the wife's claim of separate property, emphasized the fact of nonparticipation of the husband as distinguishing cases like Goldberg v. Zellner and Kahn v. Kahn. The Kearse case and our decision in Van v. Webb, 147 Texas 299, 215 S.W.

2d 151, also point up the difference, from the standpoint of presuming a gift between situations where the husband is a party and those where he is not. As suggested by Professors McCormick and Ray, (Texas Law of Evidence, p. 956, especially Note 26) in connection with the parol evidence rule, a third party grantor, not interested in the community one way or another, has no standing whereby to impose a particular character on the estate conveyed; so the recital in his deed may be regarded merely as one of an existing fact, which may properly be disputed by evidence, as distinguished from an operative portion of the deed, which it probably is where the husband is a party and which ought not be contradicted by parol. Lindsay v. Clayman, supra, clearly recognizes the inapplicability of the parol evidence rule to situations in which the husband, claiming the property to be community, was not a party to the purchase.

■ Thus in the latter instance not only is the husband free of the parol evidence rule in proving the community nature of the transaction as against the separate property recitals in the deed, but also there would seem to be little more reason to apply a presumption from the recitals in favor of the wife's separate estate than to apply the elemental presumption to the contrary effect. It is accordingly reasonable to say that in such a case, once there is adductd evidence of probative force tending to show the property to have been purchased with community funds, the question as to the status of the property is ordinarily one of fact.

■ Applying these principles to the instant case, we first conclude that the joinder of the respondent-plaintiff in the bank note in the Wilson purchase makes an important difference between it and the Stewart and Walker purchases. Regarding the two latter, which we will discuss more fully further on, there may well be ground to support implied findings of the trial judge in accord with the testimony of the respondent-plaintiff to the effect that he was in nowise a party to the transactions, and that the property was purchased with community funds. But to say that the respondent-plaintiff was not a party to the Wilson in the face of what he admits knowing generally, plus the fact that he was expressly a party to the bank note and deed of trust, would be too much at variance with human experience, in the absence of proof of duress or fraud on the part of the testatrix or the bank, of which there was none. Since he was undoubtedly a party to the transaction, we may thus hold the Wilson property to be separate on the theory of implied gift

from the respondent-plaintiff as a matter of law, considering the recitals in the deed that the premises were conveyed as separate property for separate property consideration, whatever be the actual character of the consideration and despite that the note may have bound the community. Goldberg v. Zellner, Smith v. Buss, Paudler v. Paudler, all supra. Or we may say with almost equal certainty that the respondent-plaintiff was cut off by the parol evidence rule from showing the consideration or nature of the estate conveyed, should these be at variance with the mentioned recitals. Lindsay v. Clayman, Kahn v. Kahn, both supra; McKivett v. McKivett, 123 Texas 298, 70 S.W. 2d 694; Davis v. Davis, 141 Texas 613, 175 S.W. 2d 226. That the note itself did not speak of separate funds (although it did say "borrowed by Willie Lesca Ellis") and was not referred to in the deed, does not change the result. It was all one transaction, and the deed recited "from her separate estate."

The full title to the Wilson property therefore passes to the petitioners-defendants under paragraph Fourth of the will (in the manner therein stated) and the courts below erred in adjudging a half interest to the respondent-plaintiff.

Regarding the Stewart and Walker properties, the evidence suggests two general lines of approach. The first is whether, viewing it as a whole, the respondent-plaintiff was, as a matter of law, a party to these purchases also, which would in turn lead to the conclusion either that he should be deemed to have made a gift of any community interest he might otherwise have enjoyed in the properties or that he was barred by the parol evidence rule from contesting the recitals in the deeds. The other approach is whether, assuming him not to have been connected with the purchases as such, yet the *funds* that went into them were, as a matter of law, the testatrix' separate funds, for reasons such as lack of any evidence indicating them to be community or because his conduct prior to the purchases had effected a gift or other valid transfer of the funds to her separate estate.

Since he signed no papers in connection with either purchase transaction, it seems impossible to reject, as a matter of law, his testimony, however "thin," that he had no detailed knowledge of the deeds, especially when the latter is consistent with the more or less undisputed fact that both parties customarily acted "on their own" to a considerable degree in business matters. From the fact that *he* bought land with *his* earnings and considered it *his* property, it does not necessarily follow that

whenever the testatrix may have bought land with community funds he made a gift of that land to her. To say that he was legally charged with specific knowledge of, and thus also participation in, each purchase, merely because of the custom prevailing between them, is the equivalent of approving an agreement determining the status of future property in the face of our decisions to the contrary. See Brokaw v. Collett, Texas Comm. App., 1 S.W. 2d 1090, and cases therein cited; Strickland v. Wester, Texas Comm. App., 131 Texas 23, 112 S.W. 2d 1047; also Huie, The Community Property Law of Texas, in 13 Vernon's Texas Civ. Stats. Ann., p. XXVIII, Sec. 9. In this connection, decisions such as Robbins v. Robbins, Texas Civ. App., 125 S.W. 2d 666 and Atlanta Nat'l. Bank v. Map, Texas Civ. App., 261 S.W. 191, upholding trial court findings in favor of the wife's separate estate upon inference of gift do not appear persuasive for overturning contrary findings as a matter of law upon a similar state of facts. Nor do the 1948 amendment to Sec. 15, Art. XVI of our State Constitution, permitting formal division of community property, and the corresponding Art. 4624a, Vernon's Texas Civ. Stats. Ann (1949) purport to validate informal divisions in advance of acquisition of the property in question or otherwise change the existing law on the general subject except to the extent expressly provided in the enactments mentioned.

Viewing the matter then as one to be determined according to what funds went into the purchases, there is evidence that both separate and community funds came into possession of the testatrix, to wit, the $600 inheritance about 1937 and the $5,625 proceeds of her Decatur separate property around early 1946, and on the other hand, the rents from her Wise County property of about $60 per month from the very beginning of the marriage, her earnings between 1937 and 1947 of about $3,000, the profits of the chicken business between 1942 and 1945 of about $3,000 and, beginning with early 1945, the rents from the Stewart property (between $200 and $300 per month) and the other properties as these were acquired. These rentals, earnings and profits were undoubtedly all community property in their inception. Aside from the statements — largely conclusions — that the chicken money went into the Walker purchase, and that all funds handled by the testatrix went through her bank account, we have only inferences as to what was done with either the one type of funds or the other. However, considering the substantial amounts of the community type funds in relation to the amount of separate funds involved and the large total consideration paid for the properties, as well as the absence of

evidence as to other separate property that might have been employed, there is a permissible inference that some of the community type went into the purchases. Tramell v. Trammell, (5 Cir.) 269 Fed. 114, which affirmed a judgment for the separate estate in a generally similar situation, might have reached a contrary result, had the findings of the trial court been in favor of the community. It was there said, among other things, that "the trial court would have been warranted from the testimony of appellee (the wife) in holding that her individual funds were kept in the bank separate from community funds."

■ Conceivably the otherwise community portion of the funds might, prior to the use of both types in the purchases, have somehow become the separate property of the testatrix, so as to result in the purchased property being clearly separate because acquired entirely with separate funds. But the burden to show that fact would be on the petitioners-defendants, and we cannot say that they have established it as a matter of law. If we say that all of the erstwhile community funds (as well as the separate) went into the testatrix' bank account (whence there was some evidence that all purchase payments were made) such would not necessarily make them separate funds. The presumption concerning separate property status of bank accounts established by Art. 4622, Vernon's Texas Civ. Stats. Ann., does not apply where the contest is between the spouses themselves or their successors. It was so held by our Courts of Civil Appeals in Rippy v. Rippy, 49 S.W. 2d 494, and Callaway v. Clark, 200 S.W. 2d 447, 448, and in each instance we "refused" a writ of error. As before indicated, the general practice of the wife of putting erstwhile community funds into a bank account in her own name, even where the husband in effect concurs with the practice "for business reasons," can hardly be considered a gift from him of all such funds as a matter of law, without thereby validating agreements as to the status of future acquired property. We may add that the fact of intermingling the two types of funds beyond ability to resegregate them does not of itself cause the aggregate to be separate but rather the contrary. Rippy v. Rippy, supra. The Trammell case, supra, does not hold otherwise, and the relevant holding in Amend v. Jahns, Texas Civ. App., 184 S.W. 729, 731, amounts to no more than that the commingling in the husband's bank account of proceeds of the sale of the wife's separate property "did not defeat her title to the proceeds," the jury having found in her favor.

■ Since we cannot say that the finding of the trial court that the Stewart and Walker properties were community is wrong

as a matter of law, we must accordingly treat them as community.

The petitioners-defendants further contend that the respondent-plaintiff who did not and does not contest the probate of the will, has yet by this suit violated the forfeiture provisions (paragraph Eighth) thereof forbidding even a "question" of "any clause thereof in any judicial proceeding" and therefore should be denied the benefits accorded him by the will.

The will refers directly to him only in paragraph Fifth, which devises the Stewart property

"to my husband for life or until his remarriage to my sister, Nellie Mae Whitaker Hodge, if she be living, and if she be not living * * *, then * * * to my niece, Margie Nell Hodge Motley and her heirs and assigns in fee simple * * *."

The only other reference to him is the indirect one in paragraph Fourth, which devises life estates to the sister and niece, with remainder in fee to the grandnephew, in the Walker and Wilson properties *and* in "my community interest in" the homestead.

It is to be noted that the above dispositions deal respectively with specific premises. Paragraph Third does likewise in devising the Wise County properties.

The contention is that, since the devices, being specific, purport to dispose of the full title of each property, the attempt of the respondent-plaintiff to establish a half interest in himself under the community property laws is to "question" a "clause" of the will in a "judicial proceeding." The same result is attributed to his assertion (and the corresponding award of the courts below) of a statutory life interest in both undivided halves of the homestead, because, so the petitioners-defendants now say, the enjoyment by the sister and niece of the life estates devised them in the estatrix' half will necessarily be frustrated by the life occupancy of the whole by the respondent-plaintiff. To the foregoing might well be added, as a "question," the novel claim of the respondent-plaintiff in his supplemental petition in the trial court, to the effect that the above-quoted portion of paragraph Fifth (Stewart property) operated to give him, not the life estate therein clearly specified, but the fee, because of the use of the word "heirs" in defining the fee remainder to the niece, which he says invokes the "Rule in Shelley's Case."

■ At this point we must say that, so far as the forfeiture con-

tention, or the election contention hereinafter discussed, might impair the award of full homestead rights to the respondent-plaintiff, such contentions are immaterial, however meritorious. In their pleadings in the trial court, the petitioners-defendants affirmatively conceded to him the full homestead rights, which his pleadings asserted, and did not repudicate that judicial admission until the appeal. The change of position came too late and cannot now be validated, so the judgments below in this respect must remain undisturbed.

And in so far as the forfeiture contention applies to the life estate of the respondent-plaintiff in the Stewart property, it becomes probably immaterial for practical purposes in view of our within conclusion that he is faced with an election and thus cannot enjoy both the life estate and his community half interest in the fee of the Stewart and Walker. The value of the two community interests are, no doubt, such that he would not exchange them for a life interest in the whole of the Stewart, even if he has not forfeited his right to choose the latter as a result of the "no contest" provision of the will. We thus pass to the election question.

■ Since, as above indicated, the devises of the remainder in the Stewart and the full fee in the Walker to the petitioners-defendants are specific, they must be taken as intending to pass both undivided halves and not merely the testatrix' community half. The will thus disposes of property of the respondent-plaintiff. At the same time the life estate devised to him is a benefit, and one of which the testatrix might have deprived him by some alternative testamentary disposition of the property. What he would have taken in case of her intestacy has nothing to do with the matter of benefits. For a discussion of all these questions, see our recent decision in Wright v. Wright, 154 Texas 138, 274 S.W. 2d 670. The finding of the trial court that the testatrix did not intend to devise anything but the respective halves she owned, and the corresponding view of the Court of Civil Appeals that she was under a misapprehension as to her ownership, when she purported to devise both halves, do not change the situation. As stated in Wright v. Wright, supra, the question is merely the law question of whether the will itself is open to no other construction than that it disposes of property of the party to be charged with election. If so, there must be an election. If any other construction is available, the intent not to dispose of another's property is conclusively presumed. We might add that there is nothing whatever in the will to indicate that the testatrix would have written its clear terms otherwise than she

did if she had been better advised about the status of the property in question.

■ The most serious argument against election is that the point was not raised until the appeal. The petitioners-defendants obviously did not plead it properly, their plea being in terms of a violation of the "no contest" provisions of the will on the theory above described. But the pleading, in our view, did bring the elements of election to the court's attention, that is, it alleged the respondent-plaintiff to be claiming both against and under the will. Moreover, the suit as filed by the respondent-plaintiff was in effect a suit to determine his rights under the will and as community survivor, with all relevant facts pleaded, including the will itself. Under such circumstances, the failure of the petitioners-defendants to use the words "election" or otherwise spell out the legal conclusion to follow from the facts shown by the pleadings should not cut them off. Actually the trial court's finding that the testatrix did not intend to devise any property but her own, indicates that the court had the election problem in mind. The award by both courts to the respondent-plaintiff of a life estate under the will in the testatrix' half of the Stewart property, while at the same time awarding him his community half in the Stewart and Walker properties, was thus erroneous because he could not take both without "disappointing" the will. Wright v. Wright, supra.

■ As to whether an election has already been made, we do not consider the prosecution of this suit to have that result, because it is in effect but an effort to be allowed to take both under and against the will. Nor can it be said that the evidence otherwise shows an election one way or the other as a matter of law. Upon remand, the issue of actual election may be tried. Election by the respondent-plaintiff to take *under* the will results, of course, in an estate in his favor in the Stewart property until his death or remarriage, but also in his loss of the community interest which we otherwise adjudge to him in that property and the Walker property. In such event the remainder estate in the Stewart and all interests in the Walker will belong to the petitioners-defendants according to the terms of paragraphs Fifth and Fourth of the will. On the other hand, election *against* the will involves the loss to the respondent-plaintiff of his devised life interest in the Stewart, but immediate ownership by him of a community half interest in both properties, the other half interests going to the petitioners-defendants under Articles Fifth and Fourth of the will, respectively, as therein provided. The result in the case of the Stewart property would

be that the stipulated remainder interest of the testatrix' sister, Mrs. Hodge, in the whole, becomes a presently possessory interest in half, as if the relinquished life estate of the respondent-plaintiff were a lapsed legacy.

Except as hereinafter noted, the rulings below present no error.

The judgments below are reversed to the extent hereinabove indicated, but otherwise affirmed. The cause is remanded to the trial court with instructions to modify its judgment so as to award the full title of the Wilson property to the petitioners-defendants in the manner provided by paragraph Fourth of the will, and for further proceedings incident to election by the respondent-plaintiff between his community rights in the Stewart and Walker properties and his life estate in the former under paragraph Fifth of the will in accordance with this opinion.

Opinion delivered April 13, 1955.

MR. JUSTICE SMITH, joined by JUSTICES CALVERT and WALKER, concurring in part and dissenting in part.

I agree with the majority opinion on all points decided with the exception of the holding that the full title to the Wilson property passed to the petitioners under paragraph Four of the will. The mere fact that respondent joined in signing the note and deed of trust to secure the money which was borrowed to purchase the Wilson property does not overcome the undisputed evidence that respondent did not know of the recitations contained in the deed. The trial court found as a fact that the Wilson property was community property. The evidence does not show an intent on the part of respondent to make a gift of this property to his wife. The petitioners cite the case of Emerson-Brantingham Implement Co. v. Brothers, Texas Civ. App., 194 S.W. 608, 609, (no writ history) to support its contention that the signing of the note and deed of trust is evidence of a gift and that the Wilson property passed under the will as separate property. In that case the evidence showed "that it was the understanding and agreement between the parties that the money *borrowed on the note at the time of the transaction should be the separate property of Mrs. Brothers."* (Emphasis added). We have no such evidence in this case. In the present case the note does not contain any recitations to the effect that the money borrowed was to be the separate property of Mrs. Ellis. The deed of trust is not in evidence. The note was an obligation of

the community. See Rosenbaum et al v. Texas Bldg. & Mortg. Co., et al, 140 Texas 325, 167 S.W. 2d 506.

The trial court, upon controverted facts, found that the Wilson property was community and the Court of Civil Appeals has affirmed such holding. This Court cannot say as a matter of law the Wilson tract is separate property.

Opinion delivered April 13, 1955.

Rehearing denied May 11, 1955.