MOORE et ux. v. MOORE et al.　(No. 5880.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 31, 1917. Rehearing Denied Nov. 28, 1917.)

1. WILLS ⬤═62—JOINT WILLS AS CONTRACTS.
A husband and wife executed a joint will devising their community land to the children and grandchildren, and providing that on the death of either the survivor should have the exclusive use and control of all property and the use and revenues thereof, with the option, however, of surrendering the property to the executor, who was thereupon directed to proceed with its disposition and distribution. After the husband's death, the wife probated the will, accepted the revenue and use of the entire estate, and executed a codicil, expressly ratifying the joint will. *Held*, that the will evidenced an agreement by the survivor to take a life estate in all of the property, and for a valuable consideration, vesting the fee in the devisees.

2. WILLS ⬤═188 — REVOCATION OF JOINT WILLS—POWER TO REVOKE.
At least after the execution of the codicil, the widow could not abrogate the provisions of the joint will, and she owned only a life estate, and the children and grandchildren owned the fee.

3. LIFE ESTATES ⬤═24—MORTGAGES BY LIFE TENANT—LIABILITY OF REMAINDERMAN.
As the widow owned only a life estate, and as the will gave her no power to sell or mortgage the remainder, a mortgage executed by her to secure a note made by her and one of the sons covered only the life estate, and where such son paid the note after the widow's death, the other devisees took their devises free from the lien, and were under no legal liability of contribution.

Appeal from District Court, Fayette County; Frank S. Roberts, Judge.

Suit by C. W. Moore and wife against Scott Moore and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Duncan & Burleson, of La Grange, for appellants. L. D. Brown and C. D. Krause, both of La Grange, and J. E. Shropshire, of Brady, for appellees.

SWEARINGEN, J. This is a suit by appellants, C. W. Moore and Lizzie Moore, against Mrs. Mattie Redd Northrup and her husband, S. G. Northrup, W. Scott Moore, and T. W. Moore to compel contribution towards payment of a debt of $2,100, alleged to have been the unpaid debt of Martha Moore, from whom appellees are alleged to have received, by inheritance, real property. The trial court sustained a general demurrer to the pleadings of appellants, and rendered judgment against appellants in accordance with the ruling upon the demurrer. The act of the court sustaining the demurrer is assigned as error and presents the one question for our consideration.

It appears from the pleadings that R. A. Wolters, on December 26, 1905, received a note for $2,100, which was signed by Martha Moore, her son, C. W. Moore, and Lizzie Moore, his wife. The note was secured by a deed of trust on certain property, the title to which depends upon the terms of the joint will of Martha Moore and her husband, T. C. Moore. After Wolters brought suit to collect the amount of the note and to foreclose the deed of trust, appellants, C. W. Moore and his wife, Lizzie Moore, paid the entire amount to Wolters and obtained a release of the entire lien. This payment is alleged to have been a forced payment of a debt due by the estate of Martha Moore. It is alleged that appellees, as beneficiaries of their mother's will, received real estate. Appellants adopted the allegations of the petition filed by Wolters in so far as the same did not contradict their own pleading, and made the joint will of Martha Moore and T. C. Moore, which was a part of appellees' answer, a part of their own petition. From the various pleadings thus filed and adopted, it was alleged that T. C. Moore and Martha Moore owned, in community, an estate consisting largely of real property; that on September 3, 1895, they executed the following will:

"The State of Texas, County of Fayette.

"Know all men by these presents, that we, Thos. C. Moore and wife, Martha W. Moore, of said county and state, being of sound mind and memory, and desirous of making disposition of such property with which it has pleased God to bless us, do make and declare this to be our last will and testament, hereby revoking any and all other wills by us at any time made.

"First. Whereas, we have had our lands and lots surveyed and numbered and allotted, and a map of the same made, we hereby make and constitute said map a part of this will which is marked 'Map No. A' which is hereto attached.

"Second. We hereby appoint and constitute Charles W. Moore (our son) executor of this our last will and testament and it is our desire that no bond be required of him while acting as such. It is also our desire that no action be had in any court in probating this will further than to return an inventory of our estate, and to prove and record this will.

"Third. In the event that said Charles W. Moore be not living at our demise or the demise of either of us, then it is our desire and we hereby direct that the majority of our sons then living shall choose and elect an executor of this our will, and we desire that no bond be required of the one so elected.

"Fourth. It is our desire and we hereby direct that all of our just debts and funeral expenses be paid out of our estate by the executor of this will as soon after our demise as by him shall be deemed practicable and convenient.

"Fifth. For the purpose of locating and describing the lands herein after devised all lands lying south of a line running east and west, beginning at the N. E. corner of Charles W. Moore's post oak survey of 35 acres, thence east to the S. A. & A. P. Railroad right of way for corner, all south of said line to be known and designated as post oak lands, and all north, of said line to be known and designated as river or valley lands.

"Sixth. We bequeath and devise unto our son, Charles W. Moore, tract No. 1 of post oak lands, as per map hereinbefore referred to, said tract containing twenty acres of land more or less. Also we bequeath and devise unto our son, Charles W. Moore, tract No. 7 of river or valley land as per said map containing one hundred and six acres of land, said tract lying north of the line described in the 5th paragraph and containing all of our lands lying north of said line and west of the S. A. & A. P. Railroad north to the M., K. & T. Railroad right of way.

"Seventh. We give and devise unto our son Charles W. Moore the lot or block upon which our home and residence is situated said lot or block lying immediately east of the S. A. & A. P. Railroad and the (3) three fractional lots, fronting on Lafayette street adjoining our residence block, which said lots were purchased by Thos. C. Moore from Bing Admiral and by him from F. A. Hess and wife said fractional lots appearing upon the map of West Point according to the plan of record, the residence block being number 3 on the map hereto attached and referred to.

"Eighth. We give and bequeath unto our son, C. W. Moore, the following personal property to wit: One pair of mules, one yoke of oxen and three milk cows, all of which to be selected by him before disposition be made of any personal property. We also give unto our son, C. W. Moore, the gun, pistol and bowie knife we may die possessed of.

"Ninth. We hereby bequeath and devise unto our son, J. H. Moore, post oak tract No. 2 on map of survey hereto attached containing twenty-nine acres of land more or less, also tract No. 9 river or valley land as appearing on said map, containing one hundred and twenty-eight acres of land more or less.

"Tenth. We hereby bequeath and devise unto W. S. Moore, our grandson, post oak tract No. 5 as appearing on said map hereto attached containing twenty-six acres of land more or less. Also tract No. 10 river land as appearing on said map or survey hereto attached containing eighty-seven acres of land, more or less. Also one house and lot, to wit, lot No. 5 as appearing upon said map said house known as the Jerry Crawford house. Also block No. 6 as appearing on said map, said block being known as the John Crawford place.

"It is provided, however, that in case of the death of our grandson, W. S. Moore, before this will is proven and recorded, then the bequests and devises as made to him to be null and void, and the property so devised unto him to be equally divided between the other legatees as named in this will.

"Eleventh. We bequeath and devise unto our granddaughter, Mrs. Mattie Redd Northrup née McClellan post oak tract No. 6 as appearing on said map or survey hereto attached containing twenty acres of land more or less, also tract No. eleven of river or valley land, according to said map or survey containing eighty acres of land more or less. Also block No. 4 as per said map, including the house known as the Ike Simms house, excepting out of said block that portion surveyed off east end of said block known as the Webb tract.

"Twelfth. We bequeath and devise unto our son, Dyer Moore, post oak tract No. (3) three as appears on the map or survey hereto attached containing twenty-nine acres of land more or less. Also tract No. (12) twelve of river land as appears on said map containing one hundred and fifteen acres of land more or less. Also block No. (7) seven and known as the Jack Andrews place.

"Thirteenth. We bequeath and devise unto our son, Dr. T. W. Moore, post oak tract No. 4, as appears on the map or survey hereto attached containing (29) twenty-nine acres of land more or less. Also tract No. (13) thirteen of river or valley land containing one hundred and twenty acres of land more or less, also block No. (8) eight as on said map and known as the Albert McDuffy place.

"Fourteenth. Whereas some of our children and legatees herein, are indebted unto us, in various sums of money, and whereas we do not desire the collection of said money by our executor, we hereby cancel any and all indebtedness due us by them up to August the 31st, 1895.

"Fifteenth. We hereby bequeath and devise unto our daughter-in-law Lizzie D. Moore as a token of our esteem and affection for her patience and kindness exhibited to us, through long years, such buggy and buggy and horse as we may die possessed of.

"Sixteenth. We bequeath unto our son, C. W. Moore our new sole leather trunk for his own use and benefit, also one wagon to be selected by him before any disposition of personal property is made.

"Sixteenth. We direct that all the residue of our property both real and personal, which is not mentioned herein, be sold by the executor of this will, and upon such terms as by him may be deemed best, and the proceeds arising from the sale thereof to be equally divided between our four sons, and two grandchildren, to wit, J. H. Moore, Dyer Moore, Dr. T. W. Moore, Charles W. Moore, W. S. Moore and Mrs. Mattie Redd Northrup.

"It is expressly provided and directed that in the event of the death of W. S. Moore before the final distribution of the personal property as hereinbefore directed, then the amount of the proceeds as directed to be paid to him, is to be equally divided by the executor hereof between the remaining five mentioned legatees.

"Seventeenth. We direct and desire that at the death of either of us, that this will be offered for probate, as the last will and testament of the one deceased, but for no other purpose

than to prove and record same, and we expressly direct and desire that the survivor shall have the exclusive use and control of all the property both real and personal, and the use, fruits revenues, of said property shall be the exclusive property of the one so surviving, provided however that the survivor shall have option of the surrendering said property herein bequeathed and devised to the executor herein named and upon such surrender of the property to the executor by the survivor then the executor hereof is directed to proceed with the disposition and distribution of the property both real and personal as hereinbefore directed.

"In testimony whereof we hereunto subscribed our names in the presence of John T. Drisdale and F. A. Hess who subscribe the same as witnesses at our request in our presence and in the presence of each other this the 3rd day of September A. D. 1895.

"T. C. Moore.
"Martha W. Moore.

"Signed in our presence and in the presence of each other and we subscribe the same as witnesses at their request this 3rd, 1895.

"J. T. Drisdale.
"F. A. Hess."

Afterwards T. C. Moore died. The joint will was probated, but Charles W. Moore, it seems, did not qualify as executor, but the widow, Martha Moore, elected to remain in control of the entire estate and use the revenues thereof to the exclusion of all the beneficiaries. On June 18, 1900, Martha Moore, in addition to the evidence of ratification of the joint will by exclusively using the entire estate, expressly ratified the same by a solemnly executed codicil to the joint will:

"The State of Texas, County of Fayette.

"That I, Martha W. Moore, of said County and State, having in connection with my deceased husband, T. C. Moore, made our mutual Will of date Septr. 3rd 1895, which said Will was duly probated in said County as the last Will and Testament of said T. C. Moore and duly recorded in said County's probate records in Book or Vol. U pp. 558 to 563 inclusive with all the maps diagrams & plats, thereto attached and being desirous that any will and testament in all particulars conform to said will probated and recorded as aforesaid do declare this my codicil thereto is only to confirm said will probated and recorded as aforesaid in all its particulars as my last Will and Testament, and I do adopt and confirm, and do declare all the bequests and devises, the appointment of the independent executor, with all the powers in him, without any bond, and all other provisions in said will probated as aforesaid, together with the maps, platts & diagrams thereto attached and recorded as aforesaid this June 18th 1900.

"Martha W. Moore.

"We sign as witnesses at the request of said Martha W. Moore, in her presence and in the presence of each other.    J. T. Drisdale.
"L. W. Moore.
"J. P. Haynie."

Her son, Chas. W. Moore, lived with her and acted as her agent. December 26, 1905, Martha Moore executed the joint note with Charles W. Moore and Lizzie Moore, and executed the deed of trust securing the note.

In 1907 Martha Moore died, and the joint will was probated as her will.

[1] The will itself evidences an agreement between Martha Moore and her husband, T. C. Moore, in September, 1895, whereby Martha Moore agreed to take a life estate in all of her husband's portion of the community property to the exclusion of their sons and daughters and to reduce her own community rights in the estate to a life estate. By this agreement she and her husband, by a reciprocal agreement between them, and for valuable consideration to the survivor, vested the fee in their lawful heirs named in the joint will. After the death of T. C. Moore, the widow, Martha Moore, had the power, doubtless, to revoke the joint will, in so far as it was her will, but she did not. On the contrary, she had the will probated, and in accordance with its terms she accepted the benefit of the revenue and use of the entire estate until June, 1900, when she executed the codicil, for the express purpose of further ratifying the agreement made with her husband and expressed in the terms of the joint will.

[2, 3] After June 18, 1900, at least, Martha owned only a life estate in the lands devised by the joint will, and the children owned the fee in the particular real estate allotted to each in the joint will. On December 26, 1905, when the note for $2,100 and the deed of trust were signed by her, she owned only a life estate in the property bequeathed by the joint will. The fee was in the children. The will gave to her no power to sell nor to mortgage the children's fee title in remainder. She could, of course, mortgage her life estate.

The law applicable to the facts above adduced is so learnedly analyzed and so clearly stated by Mr. Justice Rice, in the case of Larrabee v. Porter, 166 S. W. 395, that we will not attempt to discuss it further than to submit the following quotation:

" * * * It seems clear from the authorities, G. W. Larrabee at any time prior to his death, after having probated the will and accepted the benefits thereunder, could not himself have abrogated it. * * * "

Appellants alleged no facts tending to raise the issue of innocent purchaser; hence they are limited to the exact title that Martha Moore had in the estate, and nothing better.

When Martha Moore died, the life estate ended. Our conclusion is that the appellees obtained their portions of the inheritance free from the debt, and are under no legal liability of contribution.

There was no error in the judgment, which is affirmed.