**WAGNON et al. v. WAGNON.** (No. 7320.)

Court of Civil Appeals of Texas. Austin.
March 27, 1929.

Appellant's Rehearing Denied April 10, 1929.
Appellee's Rehearing Denied April 17,
1929.

McCartney & McCartney, of Brownwood, and W. C. Jackson, of Ft. Stockton, for appellants.

Wilkinson & Wilkinson and Callaway & Callaway, all of Brownwood, for appellee.

BAUGH, J. This was a suit by the appellee, Mrs. R. L. Wagnon, second wife of R. M. Wagnon, deceased, as plaintiff below, against his children by his first wife, and against the independent executor of his will, to establish a debt in her favor in the sum of $1,588 against his estate, to have set aside to her a homestead and certain statutory exemptions, or money in lieu of same, and to partition the community estate of herself and said R. M. Wagnon. The trial was to the court without a jury, who filed his findings of fact and conclusions of law and rendered judgment accordingly. Both the plaintiff and the defendants excepted to same, and the defendants have appealed. Appellee, however, has filed no cross-assignments of error.

R. M. Wagnon and his first wife, E. M. Wagnon, executed on April 6, 1905, before the same witnesses, wills containing identically the same provisions, except that each named the other as beneficiary. We quote the second paragraph from Mrs. Wagnon's will:

"I give to my husband, R. M. Wagnon, all the residue of my estate, after my just debts are paid, both personal and real of every description whatever, to use, possess and control as his own individual property so long as he may live and at his death it is my will that the title and possession of my property pass to my children and their legal heirs respectively, share and share alike."

Mrs. E. M. Wagnon died in 1909, and R. M. Wagnon had her will duly probated. She left, in addition to certain lands, community personalty of the net value of $7,100, all in the possession of R. M. Wagnon.

In 1914 R. M. Wagnon married the appellee, a widow who also has a separate estate consisting of lands and personal property. They lived together until the death of R. M. Wagnon in August, 1926. The will of R. M. Wagnon, identical with that of his first wife, was then probated, with W. C. Jackson, one

of the appellants, as independent executor. This suit involved a determination, then, of whether certain portions of the property in controversy were separate property of the second wife, R. L. Wagnon, the community property of herself and R. M. Wagnon, or the property of the children of R. M. Wagnon and his first wife. Further facts necessary to an understanding of the issues raised will be stated in our discussion of such issues.

Appellants' first assignment is that the trial court erred in permitting Mrs. R. L. Wagnon to testify over their objections that she paid R. M. Wagnon $1,468 out of her separate funds several years prior to his death and that he never repaid her, and of conver sations with him with reference thereto.

We sustain this assignment. Such testimony is inhibited by article 3716, R. S. 1925— being a transaction with the deceased. Appellee insists under counter propositions that the testimony was admissible for two reasons: (1) Because appellee was not suing as heir or legal representative, but in her own right, for her separate property; and (2) because the suit was against the devisees and legatees under said wills. Under their first counter proposition appellees cited a line of cases beginning with Harris v. Warlick (Tex. Civ. App.) 42 S. W. 356, down to King v. Morris (Tex. Com. App.) 1 S.W.(2d) 605, and under the second counter proposition Newton v. Newton, 77 Tex. 508, 14 S. W. 157, and cases following the rule there announced. In those cases, however, suit was either by a party in his own right against third parties or by or against legatees or devisees for the recovery of property; or were cases where the executor or administrator, where sued, was not a necessary party. That they announce correct rules under such facts cannot be questioned. But in the instant case the executor, W. C. Jackson, was still acting as such, had possession of most of the property in question, was administering same, was sued by appellee as executor, and appellee was seeking to compel him as such to recognize her claim for $1,468 and pay same out of the estate of R. M. Wagnon before any distribution of that estate was made by him among the devisees and legatees. And the judgment rendered directs the executor as such to reimburse the appellee in the sum named, together with $120 additional, not here controverted, out of the funds in his hands before any partition thereof be made. Clearly we think that the executor was a necessary party, and was, so far as the $1,468 item was concerned, sued as such, thus bringing the testimony admitted under the express inhibitions of article 3716. Caffey's Ex'rs v. Caffey, 12 Tex. Civ. App. 616, 35 S. W. 738; Boiders v. Dooley (Tex. Civ. App.) 154 S. W. 615; Tannehill v. Tannehill (Tex. Civ. App.) 171 S. W. 1051; Pellum v. Fleming (Tex. Civ. App.) 283 S. W. 534; Bennett v. Bennett (Tex. Civ. App.) 9 S.

W.(2d) 758; Hardin v. Hardin (Tex. Civ. App.) 1 S.W.(2d) 711.

For the same reason we overrule appellants' assignment complaining of the court's refusal to permit W. C. Jackson to testify that R. M. Wagnon told him, when he (Jackson) drew the wills in question, that said Wagnon and his first wife, E. M. Wagnon, had agreed, in effect, to dispose of their property as set forth in said wills; that he then informed said R. M. Wagnon that, if such wills were so executed, the survivor could not change them; that Wagnon thereupon said that was exactly what they wanted; and that he thereupon drew said wills and delivered them to R. M. Wagnon. The said Jackson, as executor, being a necessary party to the suit, the proffered testimony by him was likewise inhibited by article 3716, R. S. However, evidence otherwise competent, either direct or circumstantial, was admissible to show whether said wills were executed pursuant to an agreement or understanding between said testators. Porter v. Rogers (Tex. Civ. App.) 293 S. W. 579; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 96; Anderson v. Anderson, 181 Iowa, 578, 164 N. W. 1042. That oral contracts to make mutual or reciprocal wills can be shown, and that such contracts can be enforced in Texas after one of the parties has died and the will has been probated, is now well settled. Jordan v. Abney, 97 Tex. 304, 78 S. W. 486; Larrabee v. Porter (Tex. Civ. App.) 166 S. W. 395; 43 A. L. R. 1020.

The next question presented is concisely stated in appellants' proposition as follows:

"When it appears that wills of a husband and wife are both executed at the same time, before the same witnesses, and are both of the same tenor and strictly mutual in their terms, it is permissible to find and conclude that such wills were made in contemplation and in consideration of each other, and consequently are in fact mutual wills as they appear to be."

The trial court found as a fact that said wills were executed in contemplation of each other, and concluded as a matter of law that they were mutual and reciprocal wills. Appellee presents no cross-assignment as to that finding, but urges as fundamental error that such findings and conclusions are not sustained by any evidence. The wills do not refer to each other, nor do they contain any recitals that they were executed, each in consideration of the other, or pursuant to any agreement between the parties. Each was a complete instrument in and of itself. Appellants having alleged that same were made pursuant to an agreement, the burden was upon them to prove it. No evidence that they were mutual and reciprocal was before the court, unless the circumstances that they were drawn by the same scrivener were exe-

cuted at the same time before the same witnesses, and that neither was ever revoked can be construed as evidence of their mutuality. In other words, absent any proof than the wills themselves and their probate, do they show mutuality?

The decisions of the courts of the different states on this question are not harmonious. No good purpose could be served here, however, by a review of the conflicting decisions of the different jurisdictions on the question. An extensive citation and review of the cases, pro and con, is found in Stevens v. Myers, 91 Or. 114, 177 P. 37, 2 A. L. R. 1155; Seaver v. Ransom, 224 N. Y. 233, 120 N. E. 639, 2 A. L. R. 1202, and annotations. In a recent case by the Supreme Court of Tennessee [Harris v. Morgan, 7 S.W.(2d) 57], that court held that such wills themselves negative any conclusion but that same were executed pursuant to an agreement to do so, and that no parol evidence is necessary to establish such fact or agreement.

The general rule, however, appears to be that such wills, in the absence of recital that same are made pursuant to a contract, are not in themselves sufficient evidence of an enforceable contract between the testators to make same enforceable in equity. Wyche v. Clapp, 43 Tex. 543; Wanger v. Marr, 257 Mo. 497, 165 S. W. 1032; 43 A. L. R. 1028, and numerous cases there cited; Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003; 1 Alexander on Wills, p. 107, § 92; 40 Cyc. 1072, 2118. The will in Wyche v. Clapp, supra, was a joint will, and was under consideration by the court after one of the testators had died and it had been probated as to him, but his 'wife was still living. Nor had any attempt been made to revoke it. In that case the court said:

"It has been held in no case which has come under our observation, and could not in sound principle be so held, as we think, that the mere execution of an instrument in the form of a joint will can be given by construction the effect of a contract or agreement to make mutual wills which will authorize a court of equity to fasten a trust upon the estate of the defaulting party, much less to warrant its dealing with the survivor as a debtor previous to his death for his half of a legacy so bequeathed."

In addition to being in accord with the weight of authority, we take this expression of the Supreme Court as applicable to the issue here involved, and conclude that there was no proof as a matter of law sustaining the conclusion of the trial court that said wills were mutual, and conclude that his said finding and judgment in this respect was erroneous also.

■■ Appellants' propositions 5 and 6 attack the findings and conclusions of the trial court that all personal property on hand at the time of the death of R. M. Wagnon was community property of himself and his second wife, appellee herein. Appellants contend that, the court having found said wills to be reciprocal and mutual, after the death of the first wife and the probate of her will, R. M. Wagnon then held only a life interest in such property and was trustee thereof for the use of their children, and that the proceeds and accumulations of such trust estate, except such as were usable by said R. M. Wagnon under the terms of her will, belonged to the trust estate, and no part thereof became the community estate of said R. M. Wagnon and his second wife.

Though we are reversing the court's finding that said wills were mutual, in view of appellee's counter propositions, and in view of another trial, we deem it proper to discuss these questions.

If the wills in question were mutual and reciprocal and executed pursuant to agreement, though executed as separate instruments, the rights of the beneficiaries fixed thereby would be the same as if both had joined in a single joint and mutual instrument. 40 Cyc. 2110. Consequently, when R. M. Wagnon probated his wife's will, and accepted the benefits thereof, such contract between them became irrevocable, and the rights of the children, not only in their mother's estate, but in all the community then existing, became fixed and indefeasible, subject, of course, to R. M. Wagnon's right "to use, possess and control, as his own individual property," said property during his lifetime. Moore v. Moore (Tex. Civ. App.) 198 S. W. 659; Larrabee v. Porter, supra; Sherman v. Goodson's Heirs (Tex. Civ. App.) 219 S. W. 841. That is to say, if said wills were mutual and reciprocal, R. M. Wagnon, upon the probate of his first wife's will, became vested with only a life estate in the entire community property, with remainder to their children. The wills gave him no authority to sell or dispose of same, but only to use, possess, and control it as a life tenant.

If, on the other hand, said wills were not mutual and reciprocal, a life estate in only half of the community—that is the community interest of his first wife—passed to him, he owning the other half as his own separate estate.

At the time of the death of Mrs. Wagnon, the community personalty, consisting of livestock, stock in a mercantile company, and notes, had a net value of $7,100. It appears that R. M. Wagnon, when he married appellee, was in possession of personalty in excess of this value; and upon his death he had personalty of the value of $15,000 or more, none of which was derived from the separate estate of the appellee. The judgment of the trial court set aside to appellants $3,550, or half the value of the community personalty at the time of their mother's death, $1,588 to appellee as her separate property, and or-

dered the remainder, except as to some minor items not controverted, divided equally between appellee and appellants.

Excluding the testimony of the appellee as to her transactions with the deceased, there was no evidence authorizing the court to set aside to her $1,468 of said amount as her separate property. And it is not clear, after the finding that said wills were mutual, on what theory the trial court rendered judgment setting aside to appellants the $3,550 only before partition of the remainder.

We do not sustain appellants' contention that R. M. Wagnon held all of said personalty as a pure trust for his children. In a sense, any life tenant holds the estate in trust for the remaindermen, but "he differs from a trustee in a pure trust in that he may use the property for his exclusive benefit and take all of the income and profits." 21 C. J. 941. The estate which R. M. Wagnon took under the will was, we think, clearly an ordinary life estate, and held by him subject to the rules governing such estates—whether in half or in the whole of the community estate of himself and his first wife depending upon the question of the mutuality of their wills. Moore v. Moore, supra.

It is a well-settled rule that the life tenant is entitled to everything in the nature of profits or income accruing during his tenancy, in the absence of a contrary restriction or limitation. Richardson v. McCloskey (Tex. Civ. App.) 261 S. W. 816; Guthrie v. Crews, 286 Mo. 438, 229 S. W. 186; First Nat. Bank of Canton v. Mulholland, 123 Miss. 13, 85 So. 111, 13 A. L. R. 1004, and annotations; 21 C. J. 945, and cases there cited. And, unless the personal property be perishable or consumable, or express authority given in the will to dispose of it, it is the duty of the life tenant to manage it prudently, to appropriate only the income and profits, and, where personalty is sold, to invest the proceeds in such manner as not to diminish its value as a whole. He is entitled to interest on the moneys, but not to consume the principal, unless necessary; to the increase of the live stock, but he must keep up the original stock; to collect the notes, debts, etc., and use the interest, but he should reinvest the principal. 21 C. J. 1040–1042.

In the instant case, the court found that all personalty, except a few live stock in the possession of R. M. Wagnon at his death, was the community property of himself and his second wife. This finding under the undisputed facts was error. For does the legal presumption that all property on hand at his death, except that acquired by gift, devise, or descent, sustain such finding. This is only a presumption, and rebuttable as is any other presumption. When R. M. Wagnon married appellee, he had on hand at least $7,100 worth of personal property, half or all the corpus of which he held only as a life ten-

ant. He also had on hand 1,648 acres of land, several hundred acres of which were in cultivation. He was a good business man, frugal, active, economic, and a good trader. The personal property in his hands when he married appellee could not become their community property, but only the profits and income thereof. This property being such as to require reinvestment from time to time, and it appearing that at no time after the death of his first wife in 1909 did Wagnon have on hand personalty of less value than $7,100, and that there was other income and property amply sufficient to supply his and appellee's needs, it will be conclusively presumed, we think, that R. M. Wagnon used that which he was legally entitled to use, and preserved for his children the corpus of the personalty in which he had only a life estate. This is the law of pure trusts, and, though R. M. Wagnon was not a trustee in a strict sense, yet his status was that of quasi trustee, and he owed the duty to his children, as beneficiaries under their mother's will, to preserve for them the corpus of the estate of which he was only a life tenant. The established facts as to said personalty, its changes and reinvestments, coupled with the presumption that said Wagnon did his legal duty in dealing with same, was sufficient proof, we think, to remove from the operation of article 4619, R. S., the value of the personal estate on hand at the death of Wagnon's first wife.

It is admitted that R. M. Wagnon commingled the personal estate left him in his wife's will with the community estate of himself and appellee, and that the original cannot be certainly traced or identified, except as to a few horses, of little value. The issue arose, and is here presented, as to the burden of proof on the question of what constituted the community property on hand at his death. Appellants contend that, such personalty on hand at the death of his first wife having been impressed with a trust character in his hands, and he having mingled his own property with same, the whole became impressed with a trust character; that, the total value of the personalty so held in trust never having been reduced below $7,100, it will be presumed that the corpus thereof was preserved by R. M. Wagnon; and that, unless the proof clearly separated his own funds from the trust fund, the whole was chargeable with such trust. Such is the rule as to trust estates in Texas. Meyers v. Baylor University (Tex. Civ. App.) 6 S.W.(2d) 395 (writ refused), and cases there cited. Though we do not hold that the estate which passed to R. M. Wagnon under his wife's will was a pure trust estate, we think it was a quasi trust in his hands, and that the said rules and presumptions applicable to trust estates should apply, under the circumstances of this case, to the corpus of such life estate. As above stated, the amount thereof

depends upon the ultimate determination of whether said wills were executed pursuant to contract. If not, then half the community on hand at the death of Mrs. Wagnon was the separate property of R. M. Wagnon, and the rule as to that contended for by appellee applies—that is, that, having mixed his own separate property with the community of himself and his second wife, in such manner that it lost its identity, the whole will be treated as community property; and that the burden rested upon appellants in such event to clearly trace such separate property in order to have same set aside to them. Thomas v. Thomas (Tex. Civ. App.) 277 S. W. 211; Schwethelm v. Schwethelm (Tex. Civ. App.) 1 S.W.(2d) 911.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.