Maudie ODELL, Individually and as Executrix of the Will of John T. Odell, Sr., Appellant,

v.

A. A. ODELL et al., Appellees.

No. 15847.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 1, 1957.

Rehearing Denied Nov. 29, 1957.

---

Pepper & Markward, and Robt. C. Pepper, Fort Worth, for appellant.

T. R. Odell, Lubbock, Lattimore & Lattimore, Fort Worth, for appellees.

RENFRO, Justice.

This appeal poses questions as to whether or not the trial court correctly construed certain wills hereinafter mentioned and the rights of the parties deriving therefrom.

The pertinent portions of what we will refer to as the joint will, dated July 9, 1935, bearing the names of J. T. Odell, Sr., and Belle Odell, are:

"That we, J. T. Odell Sr. and Belle Odell, husband and wife, * * * and for the purpose of making the best disposition of our worldly affairs as well as to prevent any dispute among our children and grandchildren over the division of our property after we or either of us are deceased, do hereby make and publish this our last will and testament * * *."

Paragraph II provides that the survivor "of us" shall have all personal property "to be used occupied, enjoyed, conveyed, and managed as such survivor shall desire or see fit," and upon the death of the survivor any such property shall pass to certain named children and grandchildren.

It is provided in paragraph III: "It is our will and desire that the survivor of us * * * as the case may be, shall have all the revenue, use, possession, control, management and full enjoyment of all the real estate now owned by us or either of us during the life of such survivor, subject only to the authority hereinafter given to Raymond E. Odell, our son, relative to the property in the event Belle Odell survives J. T. Odell Sr., and upon the death of such survivor our real estate shall vest in and be divided among the persons following * * *" (then follows, in paragraphs IV, V, VI, VII, VIII, and IX, title to surface rights of designated properties to named devisees).

Paragraph X reads: "It is our will and desire that the mineral rights, including rentals, bonuses, and royalties vest in and belong to the following persons after the death of the survivor"; and paragraph XI designates the devises to be made after the death of the survivor, and concludes, "The said mineral rights are to be undivided, but may be conveyed as the divisees and legatees see fit after the death of the survivor of this will is deceased * * *."

Paragraph XII reads: "It is our will that the survivor, J. T. Odell or Belle Odell, as the case may be, have the full control, management and disposition, in-

cluding the power to sell, leases, collect bonuses or rentals and appropriate the said revenues to their own use and benefit so long as said survivor shall live, of all minerals in on or under the above described tracts of land."

The testators provide in paragraph XIII that J. T. Odell, Sr., shall be independent executor if Belle dies before he does, but in the event J. T. Odell, Sr., dies first, Raymond E. Odell shall be independent executor.

Paragraph XIV provides that if additional land is purchased "in the lifetime of testators," same shall be divided in the same proportion as previously set out.

Paragraph XVI reads: "It is our will and desire" that no other action shall be had in probate court, etc.

The will is witnessed by three persons and bears the following attestation: "Signed, declared and published by J. T. Odell and Belle Odell, husband and wife, as their last will and testament, in the presence of us, the undersigned witnesses, each over the age of fourteen years, the attesting witnesses, who have been requested by testators, to witness this will, who have hereto subscribed our names in the presence of J. T. Odell Sr., Belle Odell and in the presence of each other, at the special instance and request of said testator J. T. Odell Sr. and Belle Odell. It is our opinion that each of the testators are sane and understand the object of their bounty and to whom they are conferring their favor upon."

Belle Odell died February 21, 1939, and the above will was duly probated as her will by John T. Odell, Sr. On March 2, 1941, John T. Odell, Sr., married Maudie; they lived together as husband and wife until his death, July 22, 1955; no children were born of such marriage. On April 16, 1941, John T. Odell, Sr., executed a will and appointed Maudie Odell executrix. This will was probated in Tarrant County, Texas. No appeal was perfected from the order of probate.

On January 11, 1957, Austin A. Odell and others, all being the children or grandchildren of John T. Odell, Sr., and Belle Odell, filed their first amended original petition, in which they alleged the 1935 will to be a joint, mutual and contractual will of John T. Odell, Sr., and Belle Odell; after describing certain property in Throckmorton County, the plaintiffs alleged that all of said property was the community property of John T. Odell, Sr., and Belle, and by terms of the will all of said property belonged to the plaintiffs and that John T. Odell, Sr., was bound by the mutual will to bequeath and devise same to the plaintiffs. It was further alleged that certain banks were indebted to the deceased John T. Odell, Sr., that all of said deposits were proceeds of and from the above described lands; that by the 1941 will John T. Odell, Sr., attempted to devise certain portions of the real estate to Maudie Odell, contrary to the agreement in the joint will; and they also asked for title to certain premises in Fort Worth, which they alleged, were purchased with proceeds from the sale of and collections from royalties on the above described land.

The defendant, Maudie Odell, denied the allegations and filed a cross action, in which she claimed the right to administer the entire estate of John T. Odell, Sr., deceased, as executrix under his last will and testament; denied that the 1935 will was a mutual and contractual will; and further plead that the bank deposits mentioned in plaintiffs' petition were community funds of herself and John T. Odell, Sr., and that the residence in Fort Worth was community property of herself and John T. Odell, Sr.

At the close of the evidence both sides moved for an instructed verdict, whereupon the jury was dismissed and judgment entered by the court. The judgment entered divested defendant of all right to the Throckmorton County lands (set out

in the joint will), denied her any interest in the money on deposit in the banks, and gave her the right to use and occupy the Fort Worth home during her lifetime. The judgment is rather lengthy, and awards the Throckmorton County land and mineral interests to the various children and grandchildren of John T. Odell, Sr., and Belle as their interests appeared in the joint will.

Defendant's basic assignment is that the court erred in rendering judgment for plaintiffs and against defendant. This basic point is followed by thirty-seven specific points. It would be impossible to discuss each point specifically. We therefore take the liberty of reducing defendant's contention to three questions: (1) Did the court err in holding that the 1935 will was joint, mutual and contractual? (2) Did the court err in denying defendant any title to the home in Fort Worth? (3) Did the court err in denying defendant any interest in the money on deposit in the banks?

■ We will not belabor this opinion with a detailed analysis of each paragraph of the 1935 will. We think a reading of the will as a whole shows that it was executed by the parties to carry out a planned disposition of all the estate owned by the makers thereof at the death of the survivor. Under the authority of Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588; Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 168, 169 A.L.R. 1; and Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, the will was a joint, mutual and contractual will. The language in Nye v. Bradford, wherein it is said, "The will may, by its terms or in its recitals, conclusively prove or tend to prove that it is based on or executed in furtherance of agreement. * * * A will like that could not have been made without agreement between the testators that it should be so made," is particularly applicable to the instrument before us. See also Leopold v. Sochat, Tex.Civ.App., 303 S.W.2d 840; and Moore v. Moore, 198

S.W. 659. We therefore hold that the court did not err in holding the 1935 will to be joint, mutual and contractual, and that John T. Odell, Sr., had no authority to dispose of the Throckmorton County land, all of which was owned by John T. Odell, Sr., and Belle at the time of her death, by subsequent will contrary to the provisions of the joint will.

The Fort Worth home was bought on January 29, 1951; the deed was made to John T. Odell and wife, Maudie Odell, for a recited consideration of $10 and other good and valuable considerations. Immediately after the purchase of same, John T. Odell, Sr., and Maudie moved into the house and continued to reside there until his death in 1955. The defendant has continued to reside there to the present time.

We have before us a 95 page report made by a court appointed auditor showing income and expenditures of John T. Odell, Sr., from the date of Belle's death until the date of John T. Odell, Sr.'s death. The auditor also testified at the trial.

At the time of the marriage of John T. Odell, Sr., and Maudie, very little cash was on hand. However, during the years subsequent to their marriage and prior to his death, over $300,000 had reached his hands from various sources. The money for the Fort Worth residence apparently was derived from a sale of the Hamilton County ranch, which ranch had also been purchased during the time John T. Odell, Sr., and Maudie were married, and the deed to said ranch was in the name of John T. Odell, Sr., and Maudie Odell. By virtue of the provisions of Article 4619, Vernon's Ann.Civ.St., all property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife. The Hamilton County ranch was acquired with $75,000 cash, of which amount $50,000 was a loan from Connecticut General Life Insurance Company. A

Comanche County ranch, which also had been deeded to John T. Odell and Maudie as joint grantees, was traded in on the Hamilton County ranch at a value of $40,000. The Comanche County ranch was purchased for $22,724 cash and the deed recites that it was paid by John T. Odell and wife, Maudie Odell. As far as we can determine from the auditor's report, John T. Odell, Sr., subsequent to his marriage to Maudie, made no attempt to keep separate what might have been his separate money and what might have been community funds. The funds used for the purchase of the Fort Worth house were from proceeds of the sale of the Hamilton County ranch, which purchase had been made from general funds accumulated from oil, rents, profits, revenue, etc., acquired by John T. Odell, Sr., and carried in a common bank account. The aggregate became not separate but community property. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900, and the burden rested on plaintiffs to show what was separate. The plaintiffs failed to rebut the presumption that the Fort Worth property was community property.

 Only the property on hand at the time of Belle's death and still on hand at the time of John T. Odell, Sr.'s death was controlled by the 1935 will. Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588. Moreover, we have reached the conclusion that the Fort Worth home was community property in any event. Paragraph XII of the joint will reads as follows: "It is our will that the survivor, J. T. Odell or Belle Odell, as the case may be, have the full control, management and disposition, including the power to sell, leases, collect bonuses or rentals and appropriate the said revenues to their own use and benefit so long as said survivor shall live, of all minerals in on or under the above described tracts of land." No provision is made in the joint will that places any limitation whatever upon the right of John T. Odell, Sr., during his lifetime to dispose of the minerals in, on or under the lands in question. The will evidences that each of the testators reserved in himself or herself as survivor the absolute right to dispose of the minerals as such survivor might desire. The only limitation is that following the death of the survivor the minerals were to vest in the children and grandchildren in proportions set out in paragraph XI. No accounting is requested or required. All the oil production was on the Throckmorton County land. Under the law as announced in Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, John T. Odell, Sr., was authorized under the joint will to dispose of the minerals as he saw fit and that when he received "royalties" he had the right to dispose of them without an accounting to the remaindermen. See also McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412.

The will did not reserve to or confer on the remaindermen the right to share in the proceeds from a sale of the minerals. McClure v. Bailey, Tex.Civ.App., 209 S.W. 2d 671. The Throckmorton land was under lease and was producing oil before the death of Belle.

" '* * * if the opening of a mine or well was authorized by the holder of a preceding estate of inheritance, through a valid lease executed before his death, even though the well was not in fact opened till after his death, nevertheless it will be deemed an "open well" as of the date of his death, and a life tenant will be entitled to the yield therefrom as part of the issues and profits of the land. Similarly, royalties derived from oil wells opened after the death of the owner of property in pursuance of express or implied powers conferred by his will ordinarily belong to a life tenant and not to the remainderman.' " Youngman v. Shular, Tex.Civ.App., 281 S.W.2d 373, 376, affirmed, Tex.Sup., 288 S.W.2d 495.

Under the circumstances, the money received from the oil runs was income and, as such, was community property of John T. Odell, Sr., and Maudie.

The trial court erred in not rendering judgment declaring Maudie to own an undivided one-half interest in the Fort Worth property as her community interest.

As of the date of John T. Odell, Sr.'s death, he had on deposit in the First National Bank of Throckmorton the sum of $53,616.29 and in the Woodson State Bank of Woodson the sum of $12,378.75. According to the auditor's report, all money received by John T. Odell, Sr., from various sources was included in these accounts. It is clear from the auditor's report that oil sales were not segregated from other income but that all proceeds of oil sales, other income and the proceeds of other assets sold were all intermingled and disbursed for living expenses, business expenses and purchases, without distinction as to source.

 We agree with defendant that she should have been awarded judgment for one-half the Bank deposits as her community funds, and the other one-half decreed to be community funds to be administered by her as executrix under the 1941 will. The above conclusion is reached on the belief that John T. Odell, Sr.'s entire method of dealing with his estate, according to the auditor's report and testimony, showed that his bank deposits were or became community funds through such intermingling as to be beyond separation as to separate and community, and also, under the open mine doctrine, the money received by John T. Odell, Sr., and placed in the banks was community property.

The judgment of the trial court declaring the 1935 will to be joint, mutual and contractual and confirming the interests of the various children and grandchildren and denying Maudie Odell any interest in the Throckmorton County land is affirmed.

■ The judgment denying defendant title to the Fort Worth property, except right of usage, is hereby reversed and judgment rendered that Maudie Odell is enti-

tled to a one-half interest as her own community property and is awarded a life estate in John T. Odell, Sr.'s community interest, as set out in his will of 1941.

The judgment declaring Maudie Odell had no interest in the mentioned bank accounts is reversed and judgment here rendered that Maudie Odell is entitled to one-half of the money on deposit as her community half interest in the estate of herself and John T. Odell, Sr., and is entitled to administer the other half as executrix of his community estate.

We confirm the order of the trial court which directed that the auditor's fee be paid out of the funds on deposit in the First National Bank of Throckmorton; all other costs are assessed against plaintiffs.

Affirmed in part; reversed and rendered in part.