**A. H. TARVER et al., Appellants,**

**v.**

**Arline S. TARVER, Appellee.**

**No. 7543.**

Court of Civil Appeals of Texas.

Texarkana.

March 31, 1964.

Rehearing Denied May 12, 1964.

382

H. P. Smead, Jr., Smead & Harbour, Longview, L. F. Burke, Longview, for appellants.

Jack N. Price, Kenley, Ritter & Boyland, Longview, for appellee.

FANNING, Justice.

Arline S. Tarver sued her former husband, A. H. Tarver, for partition of their community estate acquired during nearly 40 years of marriage and for an accounting from the date of her divorce, May 19, 1960.

Intervenors-appellants, children and grandchildren of A. H. Tarver by a first marriage intervened seeking to impose a trust and seeking an accounting and seeking various relief by way of monetary judgments.

Trial was to a jury, resulting in the jury's response to the single issue submitted that 70% of the property held as of May 19, 1960, was community property of the marriage between A. H. Tarver and Arline S. Tarver. Upon motions for judgment non obstante veredicto filed by all parties the trial court set aside the finding of the jury and rendered judgment to the effect that all property acquired during the marriage between A. H. Tarver and Arline S. Tarver was community property of such marriage.

All property acquired prior to July 18, 1921 (the date of marriage of A. H. Tarver and Arline S. Tarver) was awarded one-half to A. H. Tarver in his separate capacity and one-half to intervenors. The judgment also required appellants to account for income attributable to appellee's one-half of the community property from the date of divorce to the date of the judgment. The judgment also required the appellee Arline S. Tarver to account for one-half the value of a diamond ring which the court found to be a gift from A. H. Tarver to Arline S. Tarver. A. H. Tarver and his intervening children and grandchildren have appealed.

The trial court, upon due request, filed findings of fact and conclusions of law, which were later partially amended and supplemented, and such findings of fact and conclusions of law as amended, deleted and supplemented read as follows:

## "FINDINGS OF FACT

### I.

"Albert H. Tarver was married to his first wife, Minnie Ora Peeler, Tarver, in 1903. To this union were born three children: Edward A. Tarver, born 1904; Kathleen Tarver, now Mrs. Kathleen Tarver Pfannkuche, born 1909; and Jack H. Tarver, born in 1915. Edward A. Tarver died in 1953, leaving two children surviving him, Kathleen Tarver and Edward A. Tarver, Jr.

"Minnie Ora Peeler Tarver died on November 30, 1918.

### II.

"At the death of his first wife in 1918, A. H. Tarver was domiciled in Texas, a community property state, and was possessed of certain assets comprising the community estate of the first marriage. There is attached hereto as schedule 'A' an inventory of such community assets.

### III.

"There was no administration on the estate of Minnie Ora Peeler Tarver, and A. H. Tarver made no accounting or division of the first community estate with the children of the first marriage.

### IV.

"A. H. Tarver and Arline Self Tarver were married July 18, 1921. At that time, A. H. Tarver was still possessed of much of the property acquired during the first marriage. Attached hereto as Schedule 'B' is an inventory of the assets of the first community estate held by A. H. Tarver at the date of the second marriage.

### V.

"Arline S. Tarver and A. H. Tarver were divorced on May 19, 1960.

### VI.

"During the intervening years between July 18, 1921, and May 19, 1960, A. H. Tarver sold, hypothecated, or otherwise disposed of most of the assets of the first community estate which were still held in his possession at the date of his marriage to Arline S. Tarver. The only assets which were part of the community estate as of November 30, 1918, and were still owned or held on May 19, 1960, are listed on Schedule 'C'.

### VII.

"Except for that listed on Schedule 'C', all of the property comprising the community estate of the first marriage which was still possessed by A. H. Tarver as of July 18, 1921, was sold or otherwise disposed of prior to the year 1947, and most of such assets were disposed of before 1930; only about $12,000.00 was received from the sale of any such assets after 1930. Schedule 'D' itemizes such property

and shows the year in which it was sold or otherwise disposed of, and the amount of money ultimately realized from such disposition.

## VIII.

"At the date of the divorce, the estate in the possession of A. H. and Arline S. Tarver consisted of the property listed on Schedule 'E'.

## IV.

"From and after the year 1922, A.H. Tarver maintained one bank account in Shreveport, Louisiana. Through this bank account were channeled virtually all income and receipts from whatever source, and disbursements for virtually all expenses and purchases.

## X.

"During the years of the marriage of Arline and A. H. Tarver, a considerable amount of income was realized. This income is analyzed in detail on Schedule 'F'.

## XI.

"Kathleen Tarver Pfannkuche and Jack Tarver, surviving children of the first marriage of A. H. Tarver, and Ned Tarver, deceased child of A. H. Tarver, consented to and acquiesced in A. H. Tarver's use of any and all property in which they had an interest, at a time when each of them were, respectively, of a legal majority. Such consent and acquiescence originated and continued over a period of time more than twenty-five years prior to the filing of Intervenor's Petition in this cause.

## XII.

"Kathleen Tarver Pfannkuche, Jack Tarver and Edward A. Tarver, during his lifetime, knew that the assets of the first community estate would be, and actually were, sold, depleted, de-

preciated, or otherwise disposed of or converted during the marriage of A. H. and Arline S. Tarver, and that the proceeds from the conversion or disposition were mixed and mingled with income realized by A. H. Tarver from all sources.

## XIII.

"A. H. Tarver gave Arline S. Tarver a ladies' solitaire one-carat diamond ring as an engagement ring prior to their marriage, which diamond ring was community property of the first marriage, and for which this Court ordered Arline S. Tarver to account for one-half of the value to the Intervenors.

## XIV.

"There was no formal trust agreement, either written or oral, regarding the property of the first community estate, between A. H. Tarver and the Intervenors.

## XV.

"During the marriage of A. H. and Arline S. Tarver, Arline S. Tarver managed the household and A. H. Tarver managed and directed all business affairs. Arline S. Tarver had no control over, and no active voice in the management of the properties, the production of income, the use or disposition of assets or income, or any of the business affairs, which were managed and directed solely by A. H. Tarver.

## XVI.

"With the exception of a fractional interest in each lease purchased from the Barclay Cook Estate shortly before the divorce on May 19, 1960, the Free and Magrill leases, more particularly described in the Judgment, were obtained through A. H. Tarver's promotional efforts in 1931. Drilling

rigs acquired during the first marriage and maintained and repaired for approximately ten years from funds acquired during the second marriage, were used for drilling such leases, but charges were made for the drilling and A. H. Tarver made a profit from such charges.

### XVII.

"Intervenors failed to trace any fund, income or assets of the first community estate into any of the property acquired during the second marriage and held as of May 19, 1960."

(Finding XVIII was withdrawn)

The court granted intervenors' additional requested finding of fact No. 15, which additional finding reads as follows:

"That the Court appointed LOUIS B. GREEN, a Certified Public Accountant, to audit the estate from 1903 to May 19, 1960, which he did, and filed same with the Clerk of this Court and no written objections were filed thereto; such audit is adopted by this Court as part of its Findings of Fact".

The trial court also granted A. H. Tarver's requested finding XIII, which reads as follows: "The audit of Louis B. Green, certified public accountant, filed in the papers of this cause, is adopted by the court as a portion of its findings of fact." In connection with this finding the court also made the additional finding "that if there be any discrepancy between the audit filed in the papers in this cause and any figures, numbers, subtotals or totals, then the audit shall control".

### "CONCLUSIONS OF LAW

#### I.

"All property acquired during the marriage of Arline and A. H. Tarver and held as of the date of the divorce on May 19, 1960, was community prop-

erty of their marriage. A complete list of such property is contained on Schedule 'G'.

#### II.

"Intervenors are entitled to no accounting or recovery of income as against the community estate of Arline Tarver.

(Conclusions of Law III and IV were withdrawn).

#### V.

"Arline S. Tarver is entitled to an accounting and to payment of one-half of all income, interest, dividends or other accruals earned or received by virtue of the community property of the marriage of A. H. and Arline S. Tarver from the date of May 19, 1960, until paid to her."

Omitted for the sake of brevity are the lengthy schedules of property attached to the findings and conclusions of the trial court. However the following references to said schedules will be made.

Schedule A, an inventory of the estate of A. H. Tarver and Minnie Ora Peeler Tarver as of November 30, 1918, shows a total value of the assets at $349,510.12.

Schedule B, an inventory of such first community estate still held by A. H. Tarver on July 18, 1921, shows the then assets to be of the total value of $260,348.95.

Schedule C shows that of the specific assets of the first community estate held by A. H. Tarver on November 18, 1918, and still held on May 19, 1960, consisting of the Hampton Royalty in Caddo Parish, Louisiana, three tracts of land in Hardin County, Texas, diamond rings, jewelry, sterling silver, Dresden china, oriental throw rugs, household furniture, fixtures and library, all of the fair market value of $20,874.50, as of November 18, 1918, was of the fair market value of $29,675.00 as of May 19, 1960.

Schedule D shows in detail the assets held on November 18, 1918, and disposed of during the marriage of A. H. and Arline Tarver, which shows that these assets were disposed of in the years from 1922 to 1930 inclusive, and the total amount ultimately realized therefrom was the sum of $147,309.97.

Schedule E shows in detail the estate in possession of A. H. and Arline Tarver on May 19, 1960. The amount of cash on hand then was $8,789.82. Schedule E shows that various listed stocks and bonds were acquired during the marriage between the years 1952 to 1960, inclusive, and were of the fair market value of $91,044.75. The said schedule E further shows that the Magrill Lease, Gregg County, Texas, and the Free Lease, Upshur and Gregg Counties were acquired in 1931 during the marriage, and were of the fair market value of $80,503 and $107,224.67, respectively. Said schedule also shows that a home in Shreveport was acquired in 1923 during the marriage, and was valued at $21,500.00. Also an interest in land in Red River Parish, Louisiana, was acquired in 1947, during the marriage, and was valued at $133.14. Schedule E also shows the property acquired before 1921 and still on hand, which is the same property as referred to in Schedule C. The total fair market value of all of the property described in Schedule E as of May 16, 1960, is listed as $340,345.38.

Schedule F is a lengthy analysis of the income realized during the marriage of Arline and A. H. Tarver.

Schedule G is an inventory of the community property of A. H. and Arline Tarver as of May 19, 1960, and is listed as having a fair market value then of $310,970.58.

The court appointed auditor's report shows that the property in the hands of A. H. Tarver steadily declined each year from 1918 until 1931. In 1931 the net worth of property held by A. H. Tarver, including all property of every character, reached a low net worth value of $48,688.70. In 1931

Mr. A. H. Tarver acquired the Free and Magrill leases and thereafter his financial status greatly improved as the years went by, largely and primarily as a result of the income from the Free and Magrill leases. From the evidence in the record it is clearly apparent that from and after the year 1931 the great bulk and substantial majority of all income realized during the marriage of A. H. Tarver and Arline Tarver came from the Free and Magrill leases.

Art. 4613, Vernon's Ann.Civ.St., provides in part as follows: "All property of the husband, both real and personal, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, shall be his separate property. * * *"

■ Separate property also is that which is logically construed to fall within the categories stated in Art. 4613, V.A.C.S., supra, such as property taken after marriage for a pre-existing debt, or in exchange for separate property, etc. Speer, Marital Rights in Texas, Vol. 1, Sec. 401.

Art. 4619, V.A.C.S., provides in part as follows: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. * * *"

■ With respect to the Free and Magrill leases, acquired in 1931, during the marriage of A. H. Tarver and Arline Tarver, which leases were the most valuable assets held by A. H. and Arline Tarver at the date of their divorce, and which leases produced most of the income during their marriage, it is our view that under this record such leases were and are clearly com-

munity property of A. H. Tarver and Arline Tarver. These leases were acquired through the talents and promotional efforts and abilities of Mr. Tarver by drilling for the interests received in such leases. Ostensibly, drilling rigs which were owned during the first marriage (and which had been maintained and repaired over ten years during the second marriage from funds ostensibly acquired during the second marriage) were used for such drilling, however Mr. A. H. Tarver testified to the effect that he charged for the drilling and made a profit thereon. It is clear that A. H. Tarver's talents and community efforts in promoting the deals and seeing that the leases were drilled resulted in the acquisition of his interests in the leases, and that no funds from any source antedating the second marriage were expended in the acquisition of such leases in 1931, which time of acquisition of the interests in such leases was about ten years after the marriage of A. H. and Arline Tarver in 1921. We hold that the interests held in the Free and Magrill leases were and are community property of A. H. Tarver and Arline Tarver. In this connection see Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 676, and authorities cited therein.

As we view and understand the auditor's report and the evidence in the record there was between $7 and $8 of community income earned during the nearly 40 years of marriage of A. H. Tarver and Arline Tarver for every $1 separate income of A. H. Tarver and funds attributable to the interest of the children in the first community estate of A. H. Tarver and Minnie Ora Peeler Tarver. However, all income was indiscriminately intermingled over the nearly 40 year period of the second marriage in one common bank account. It was clearly impossible under this record for any of the funds that might be attributable to the interest of the children of the first marriage in the first community estate to be traced through the common bank account, which contained funds commingled over a period of nearly 40 years, into

specific assets held on the day of the divorce of Arline Tarver and A. H. Tarver.

█ It is well settled law in this state that where there has been a commingling of separate funds or property with community funds or property, making it impossible to clearly trace and identify the separate contribution, the aggregate, or the assets acquired therewith, must be deemed community property. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900; Rippy v. Rippy, Tex. Civ.App., 49 S.W.2d 494, writ refused.

██ Where separate property has undergone various changes and mutations, the burden is on the party asserting the separate character to trace and identify the separate property through all changes made and show that the property so contended as separate is separate. And the intermingling of separate and community funds beyond the ability to resegregate them causes the aggregate to become community property. Hodge v. Ellis, supra.

The case of Cook v. Cook, Tex.Civ.App., 331 S.W.2d 77, is in some respects similar to the factual situation at bar with respect to the commingling of separate and community property and correctly announces principles of law applicable to the facts in the case at bar. We quote from the Cook case in part as follows:

"It is asserted that the entire income during this marriage, (except some building rentals in fixed amounts) was oil royalty income of the first community or of W. H. Cook's separate estate; and therefore any personalty purchased therefrom belongs to these estates.

"In 1943 Cook opened an account in a Grand Saline bank with a $2,057.55 deposit. During the next fourteen years of his second marriage until his death, there were hundreds of unidentified deposits and withdrawals

"Dividends, interest, loan repayments and other income from Cook's

separate estate were deposited in this account. The evidence shows that Cook engaged in commercial enterprises during this second marriage, and, although there is no affirmative showing that royalty income was deposited in the account, apparently all income, separate and community, was indiscriminately intermingled. Appellants offered evidence of totals or estimates of royalty income of the first community, but there is nothing in the record to segregate or determine the source of the deposits in the account.

"The presumption concerning the separate property status of bank accounts fixed by Art. 4622, Vernon's Ann.Tex.Civ.Stats., is inapplicable since the action is between a spouse and successors of a spouse. The commingled funds, out of which the personalty was acquired, became community property as determined by the trial court. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900, 907. The presumption of Art. 4619, Sec. 1: 'all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved,' governs. The burden of rebutting this presumption rests on appellants. Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226; Odell v. Odell, Tex.Civ.App., 306 S.W.2d 914, 918, writ ref. n. r. e. The only evidence to meet this burden is the showing that income from oil runs did exist in a large amount. The points relating to this contention are based on an insupportable factual premise. Callaway v. Clark, Tex.Civ.App., 200 S.W.2d 447, writ ref.; Davis v. Sturdivant, Tex.Civ.App., 306 S.W.2d 386."

We agree with the trial court's finding of fact that the intervenors failed to trace any fund, income or assets of the first community estate into any of the property acquired during the marriage of A. H. Tarver and Arline Tarver and held as of May 19, 1960, the date of the divorce.

It is our further view that intervenors' claim of a trust is without merit under this record. See the following authorities: Logan v. Logan, 138 Tex. 40, 156 S.W.2d 507; Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600; Sims v. Falvey, Tex.Civ.App., 234 S.W.2d 465, wr. ref., n. r. e.; Andrews v. Andrews' Estate, Tex.Civ.App., 326 S.W.2d 203.

We hold that there was evidence of probative force to support the trial court's findings of fact and that the evidence was sufficient to support same. After carefully reviewing the entire record in the cause in the light of the rules enunciated in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we further hold that none of the trial court's findings of fact are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

We agree with the trial court's conclusions of law.

We further hold that the trial court did not err in any of the matters complained of by appellant Tarver and the intervenor-appellants. Each and all of the points raised by appellant Tarver and the intervenors-appellants are respectfully overruled.

We also overrule the cross-assignments of error brought forward by appellee.

Finding that the trial court entered a correct judgment, the same is accordingly affirmed.